23499. ATLANTA CHEMICAL COMPANY *v.* HARDIN BAG COMPANY INCORPORATED.

Stephens, J. 1. Notwithstanding a written contract may contain a provision that the writing expresses the entire contract, and that any changes therein must be in writing, yet where the contract is incomplete in any respect, and its meaning is not manifest on its face, it may be added to and be completed by a mutual understanding between the parties as to its meaning and import. "The meaning placed on the contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning." Civil Code (1910), § 4267. Thus, where a written contract, executed between a manufacturer of bags and a fertilizer dealer who sells fertilizers which are shipped in bags, provides for the sale by the manufacturer to the dealer of "quantity, new 35000, goods 40/10 oz., cut 54″, price plain, per M. 136.50," and the meaning and construction placed upon the contract by both of the contracting parties is that it is a contract for the sale of burlap bags, the contract constitutes a contract for the sale of burlap bags. The description of the articles sold as thus contained in the contract, which is manifestly in the language of the trade, is subject to be translated into its true meaning and to explanation by parol. Where, as thus translated and explained, it is a description of the goods sold as being 35000 new plain burlap bags of a definite size and weight, at a price of $136.50 per thousand, the description is sufficient as an identification of the goods sold so as to constitute a contract of sale under which, in the event of the purchaser's failure to accept delivery of the goods, the goods contracted for can be determined and identified.

2. In this suit by the manufacturer against the dealer, to recover for an alleged breach by the defendant of the contract for the sale of bags, in failing to accept delivery, the petition set out a cause of action, and the court did not err in overruling the demurrer.

3. From the evidence it appeared that the plaintiff and the defendant entered into a written contract for the manufacture by the plaintiff for the defendant of a quantity of burlap bags of the description contained in the contract, to be delivered during a specified period, that before the time for delivery the plaintiff insisted upon the defendant's accepting delivery of the bags contracted for and giving to the plaintiff shipping instructions, and that upon the defendant's failure to give shipping instructions the plaintiff, with the consent and at the request of the defendant, extended the time for delivery, that before the arrival of this date the plaintiff insisted upon the defendant's accepting delivery and giving shipping instructions, which the defendant failed to do, and the defendant refused to take any bags, giving as a reason therefor that the

condition of the defendant's business did not warrant it in taking the bags, the inference is authorized, whether or not the custom to require shipping instructions as a condition precedent to the obligation resting upon the seller to make delivery became a part of the contract or not, that the plaintiff offered to make delivery under the terms of the contract, and the defendant refused to accept and thereby breached the contract. There being evidence tending to establish the amount of the plaintiff's damage as a result of defendant's breach of the contract in failing to accept delivery, the verdict found for the plaintiff was authorized.

4. Since it appears without dispute, from the evidence adduced, that the plaintiff tendered delivery to the defendant in accordance with the terms of the contract, it is immaterial whether there was, as a part of this contract, any custom of the trade that where a bag manufacturer contracts to manufacture and deliver bags during certain named months in the contract,—as January and February, the seller does not have to tender delivery until the purchaser gives the seller shipping instructions.

5. Under the above rulings, there is no merit in any of the grounds of the motion for a new trial.

*Judgment affirmed. Guerry, J., concurs. Jenkins, P. J., dissents. Sutton, J., disqualified.*

DECIDED SEPTEMBER 29, 1934.

*Weltner, Meadow & Russell,* for plaintiff in error.

*D. F. McClatchey Jr., Welborn B. Cody, Harold Hirsch, Marion Smith,* contra.

GUERRY, J., concurring specially. A written contract as follows was entered into between the Hardin Bag Company, Incorporated, and the Atlanta Chemical Company. Plaintiff wrote to defendant: "The Hardin Bag Co., Inc.—Sold to Atlanta Chemical Co.—At Atlanta—State Ga.—Ship to......at......State......via. ..... Shipment Jan./Feb., 1930—Terms Net 10 days—Terms of payment subject to revision at any time by seller—Quantity New—35000— Goods—40/10 Oz—Cut 54″—Price Plain—Per M—136.50."

Plaintiff on April 29, 1929, two days after the signing of the above order, wrote to the defendant: "We wish to confirm our conversation with you this morning at which time we had the pleasure of booking 35000 New 40″ 10 oz cut 54″ bags at $136.50 per M plain, including carload freight to Atlanta." On January 2, 1930, plaintiff wrote to defendant as follows: "Referring to our contract No. 1649 with you for 35000 New 40″ oz cut 54″ bags for shipment during Jan. & Feb., this is to advise we are in a position to make prompt shipment of these bags if you will let us have ship-

ping instructions now, it may save a delay later in the season, as we expect to be very busy." On January 21 plaintiff again wrote to defendant, requesting that shipping instructions be given. On January 24 defendant wrote to plaintiff: "We are in receipt of your letter of Jan. 21st. I regret to advise that just the other day we experienced serious ·fire damage to our plant here and it seems now that it will be rather late before we are able to take any materials. We are now trying to ascertain the time required to do the constructive work necessary and for that reason, I am unable at this time to give you anything definite. I will appreciate it very much if you will cooperate with us." Plaintiff replied to this letter and offered a settlement. On February 4, 1930, defendant wrote to plaintiff: "We are in receipt of your letter of recent date with reference to bags and wish to advise that we are making every effort possible to have things arranged within a short time here so our manufacturing can be continued." Correspondence was kept up between the parties during the remainder of the year, plaintiff at all times insisting that it was holding defendant to the contract, and offering to ship goods or settle and adjust the claim. At no time did the defendant deny liability or contend that there was no contract between the parties, but the defendant wrote, "It is impossible for us to use any bags until we begin making shipments." In the numerous letters introduced in evidence the plaintiff suggested several times to defendant that, because of the fact that the "burlap market" was weakening, defendant should make every effort to handle or dispose of the bags. When the defendant gave shipping instructions for 5000 of these bags under the contract signed, he called them "burlap bags." A reading of the letters which passed between the parties shows without question that both parties intended for the contract to refer to burlap bags.

In its answer the defendant denied all liability. It denied that the alleged contract was valid, and alleged that even if it were of force, the plaintiff did not deliver or tender to it the bags at the times specified in the contract for the delivery, and therefore, on account of this breach by the plaintiff, the defendant was released from liability, if there was any. It is contended that the contract may not be explained by parol to show its meaning. In *Hartwell Grocery Co.* v. *Mountain City Mill Co.*, 8 *Ga. App.* ·727 (70 S. E. 48), it is said: "Parol evidence is admissible to identify the sub-

ject-matter of a written contract, where the same is ambiguous, notwithstanding that the contract recites that it contains all the agreements that are to be binding upon the parties." The contract explained in that case called for so many sacks of "W. than snow" and so many sacks of "St. Elmo." The reasoning of Judge Powell in that case is very cogent. See also *Dover* v. *Iroquois Mfg. Co.*, 30 *Ga. App.* 135 (117 S. E. 109) ; *State Historical Asso.* v. *Silverman*, 6 *Ga. App.* 560 (65 S. E. 293) ; *Barrie* v. *Miller*, 104 *Ga.* 312 (30 S. E. 840, 69 Am. St. R. 171) ; *John A. Roebling's Sons Co.* v. *Southern Power Co.*, 142 *Ga.* 482 (83 S. E. 138, L. R. A. 1915B, 900) ; *Porter* v. *Sterling Products Co.*, 40 *Ga. App.* 522 (150 S. E. 457) ; *Kirby Planing-Mill Co.* v. *Hughes*, 11 *Ga. App.* 645 (4) (75 S. E. 1059).

The allegations of the amended petition which set up that defendant requested postponement of delivery and did not thereafter give shipping instructions when such postponement was assented to by plaintiff did not constitute a new cause of action, nor was the allegation that there is a custom in the trade in which plaintiff and defendant were engaged that shipping instructions be given a new cause of action so as to make such petition duplicitous. Parol evidence is admissible "because it tended to prove a universal custom of the lumber business or trade, which became by implication a part of the written contract." *Kirby Planing-Mill Co.* v. *Hughes*, supra; *Louisiana Red Cypress Co.* v. *Gilmore*, 13 *Ga. App.* 472 (79 S. E. 379).

JENKINS, P. J., dissenting. Under the Civil Code (1910), § 4106, expressing the general law, "an identification of the thing sold" and "an agreement as to the price to be paid" must coexist with "consent of the parties," in order to constitute a valid contract of sale. Where in a contract for the sale and purchase of goods there is no agreement as to the identity of the thing sold, an action for breach of the contract by refusal to accept a tender of the goods is not maintainable. *Willard Bag &c. Co.* v. *Empire State Guano Co.*, 24 *Ga. App.* 34 (99 S. E. 713) ; *United Roofing Co.* v. *Albany Mill Supply Co.*, 18 *Ga. App.* 184 (89 S. E. 177).; *Albany Mill Supply Co.* v. *United Roofing Co.*, 12 *Ga. App.* 537 (77 S. E. 829).; *Durkee Famous Foods Inc.* v. *Selig Co.*, 48 *Ga. App.* 711 (172 S. E. 824). This is a fundamental requirement, not to enforce which would destroy the sanctity of contracts and

deprive persons of all the safety and certainty that written agreements are intended to secure. It is my opinion that the printed and written instrument (apparently prepared by the plaintiff) fails utterly to provide by its own terms what it was that the plaintiff sought to sell and what it is that the defendant is sought to be charged with purchasing. The petition *sues* on the written contract as if for the purchase of burlap bags. The evidence shows that the plaintiff manufactured and sold both burlap and cotton bags, and that the defendant purchased and used large quantities of both burlap and cotton bags. The contract being silent as to which had been purchased, which was the plaintiff to demand the acceptance of? The courts have been justly liberal in allowing parties to a written contract of purchase and sale to explain by parol any ambiguities. But there must be some "hinge or hook" on which to hang the explanation. Trade terms such as are employed in the instant case are subject to explanation or translation by proving their generally accepted meaning and intent. Civil Code (1910), § 4268 (2). But there is no way to explain a total blank with respect to the character of the subject-matter. The line of cases under the doctrine that all is certain which can be made certain, which permit explanation as to what a specified trade "brand" is, or as to what a specified trade "term" imports, do not aid or assist the plaintiff in this case, where no brand is specified and no trade term is employed which could be taken to throw any light upon the material of the goods sought to be sold. If the original instrument was ineffective as constituting a contract of purchase and sale, and yet by subsequent correspondence and mutual recognition the deficiency was intended to be and was in fact remedied and the omission supplied, the contract as thus amplified by agreement of the contracting parties would become valid. It seems true enough from the voluminous correspondence between the parties in this case that each of them assumed that a contract had been made. But such an assumption on the part of the defendant would not operate to supply the fatal omission in the contract, if such defect existed, unless the correspondence supplied the omission in such a way as to remedy the defect. If the defect had related to a lack of *assent* to the agreement by the defendant in an otherwise valid contract, such recognition of the *existence* of the contract would be sufficient to give it force and effect. But if the

defect in the instrument sued on consisted in a failure to set forth the nature and character of the goods constituting the subject-matter of the alleged contract of purchase and sale, the mere implied assumption by the defendant that there was a contract would not have the effect of writing into the agreement additional provisions as to what had been purchased and sold, so as to conform to the plaintiff's contention in the suit as filed.

The provision of section 4267 of the Code, that "the intention of the parties may differ among themselves. In such case, the meaning placed on the contract by one party, and known to be thus understood by the other party, at the time, shall be held as the true meaning," refers to the meaning placed on the *language* of the contract at the time it is signed, and does not throw the doors wide open for the purpose of engrafting an additional provision which might or might not have been contemplated. The plaintiff sues as for burlap bags. The contract does not say burlap bags. Under the contract he might just as well have sued for cotton bags. Under the contract he might just as well have sued as for one-half cotton bags and one-half burlap bags, or two-thirds cotton bags and one-third burlap bags. The contract does not say which. I do not think that, merely because the plaintiff in some of its subsequent letters might have referred to the condition of the "burlap market," without claiming or intimating that it thereby sought or intended to thus bind the defendant by supplying the deficiency in the original instrument, to which reference the defendant made no allusion in any reply, could be given the effect of a supplemental agreement by which it was mutually contracted and agreed that the omission in the original contract was intended to be supplied, and that not only some of the 35,000 bags but all of the 35,000 bags were to be of burlap. The reference by the plaintiff to the condition of the "burlap market" was not made in connection with any discussion as to the nature or character of the subject-matter of the contract. It was made in reference to when shipment should be made. It might well be taken to indirectly indicate that at the time the letter was written it was in the mind of the plaintiff that either some undisclosed portion or all of the bags were to be of burlap. It indicates nothing as to what had been in the mind of the defendant. Section 4267 of the Code, as already stated, refers to the meaning placed upon the expressed language

of a contract at the time it was executed, and is intended neither to supply total deficiency nor to permit the subsequent engrafting of necessary additional terms and provisions by one of the parties, not assented to by the other. If the original instrument was void, the defendant had and has the right to stand upon its invalidity. If it was merely a matter of interpreting the language as written, then under the Code section mentioned "the meaning placed on the contract by one party, and known to be thus understood by the other party at the time," would govern. Here, however, there was no contract at all, because the material of the subject-matter was in no way expressed, and the defendant had and has the right to avoid it. A letter from one of the parties which by indirection might be taken to imply that it was in its mind that some undisclosed portion of the bags were to be of burlap throws no light upon what had been the mutual intention at the time the agreement was made. If the instrument was void, it did not bind either of the parties, and, in order to give it validity as a contract, each of the parties must have joined in some sort of supplemental agreement, supplying the deficiency. The plaintiff could not by a subsequent letter and by indirection wish his own previous *intention* (as distinguished from interpretation) upon the other party, who remained free not only of what might have been the plaintiff's intention, but of any obligation whatever. Nor do I think that the fact that the defendant gave shipping directions for 5,000 bags (whether under the 35,000 bag contract not being disclosed, but perhaps so), and in so doing gave explicit directions that these 5,000 bags should be of burlap, would operate to cure the defect in the original contract. On the contrary, it may reasonably be taken as tending the other way. Here for the first time is the use of the term "burlap bags" employed by either party. Here the defendant sought to supply the fatal defect in the original contract, but *only so far as 5,000* of the 35,000 bags were concerned. What the material of the remaining 30,000 was to be never has been stated by either party at any time.