WOOD *v.* PHŒNIX INSURANCE COMPANY.

No. 15111. JULY 3, 1945.

464

466

*Carroll D. Colley* and *J. Cecil Davis,* for plaintiff.

*Earle Norman, Smith, Smith & Bloodworth,* and *Estes Doremus,* for defendant.

BELL, Chief Justice. ■ Under paragraph 16 of the contract, the title to the property was retained by the vendor until full payment of the purchase-money; while in paragraph 6, it was agreed that "vendor shall not be held liable for any loss or damage arising from delays or damages caused by fire or strikes, delays in transportation, or other causes beyond vendor's control."

The Code, § 96-108, declares: "Where property is sold and delivered, but title is not to pass until payment in full of the purchase-money, and the property is lost, damaged, or destroyed without the vendee's fault, he is entitled to a rescission of the contract or to an abatement in the price, unless it is otherwise agreed in the contract of sale." One of the questions presented is whether paragraph 6 of the contract is such an agreement as would come within the proviso of the statute, "unless it is otherwise agreed in the contract of sale." We are of the opinion that this question should be answered in the negative. The statute refers to a situation where the property has been "sold and delivered;" while paragraph 6 of the contract apparently had no other purpose than to absolve the seller from liability "for any loss or damage" for failure to deliver according to the contract, in the event that it was prevented from so doing by fire or strikes, delays in transportation, or other causes beyond its control. While we are not aware of any previous case in which the identical stipulation has appeared, agreements of this general type are not uncommon in contracts for

the sale of property to be delivered in the future. The reports show, however, that they have generally been pleaded against claims for damages for failure to deliver according to the terms of the contract; and, except the present one, we do not know of any case that involved the question whether an agreement of this class would apply to a loss resulting from damage or destruction of the property after its delivery to the vendee. Nor, as we have indicated, do we think that the agreement here was intended to apply to such a situation. See generally in this connection, *Empire Cotton Oil Co.* v. *Producers Co.*, 29 *Ga. App.* 111 (114 S. E. 74); Normandie Shirt Co. v. Eagle, 238 N. Y. 218 (144 N. E. 507, 35 A. L. R. 714); Dant v. Grays Harbor Exportation Co., 106 Fed. 2d, 911 (125 A. L. R. 1302); Dixie Portland Flour Co. v. Kelsay-Burns Mills Co., 86 Ind. App. 137 (155 N. E. 526); Leavenworth State Bank v. Cashmere Apple Co., 118 Wash. 356 (204 Pac. 5); Smokeless Fuel Co. v. Seaton, 105 Va. 170 (52 S. E. 829); Hull Coal & Coke Co. v. Empire Coal & Coke Co., 51 C. C. A. 213 (113 Fed. 256).

In *Avery* v. *Middlebrooks,* 142 *Ga.* 830 (83 S. E. 944), cited for the plaintiff, the purchasers agreed to keep the property insured for at least one half of the purchase-money for the benefit of the sellers, and specifically guaranteed the sellers against any damage to the property by fire while it was in the buyers' possession. Accordingly, that case is distinguished by its facts from the instant case. Likewise, in *McKinney* v. *Battle,* 13 *Ga. App.* 255 (79 S. E. 92), the agreement was materially different from the one here under consideration.

The Court of Appeals erred in affirming the ruling of the trial judge striking paragraph 4 of the defendant's answer.

■ The clause of the original contract referring to the amount of the purchase-price was as follows:

"345 chairs, Style No. 1503, for each chair of this style the

| | | |
|---|---|---|
| sum | Quantity | $6.03 |
| | Grand total of contract | $2080.35 |

in cash herewith $420.35 on delivery and the balance on delivery of invoice with bill of lading attached as follows: Balance in 36 monthly payments of $54.52."

The 36 monthly payments of $54.52 plus the cash payment of $420.35 would make a total of $2383.07. The contract thus in

one place states the purchase-price as $2080.35, but immediately thereafter provides in effect that it shall be $2383.07; making a discrepancy of $302.72. Stated differently, the amount of the 36 monthly payments would be $1962.72, whereas, after deducting the cash payment from the amount first stated as the purchase-price, to wit, $2080.35, the balance would be only $1660, provided nothing was to be added. According to each calculation, there is a discrepancy of $302.72, which is not explained in the particular clause, nor by anything else contained in the contract. The amount of the note as sued on was $1962.72, that is, for the balance of the larger amount after deducting the cash payment; nor was the discrepancy explained in that instrument. In these circumstances, the clause in reference to the amount of the purchase-money was ambiguous; and this being true, the trial judge did not err in permitting the defendant to testify that at the time she entered into the contract with the desk company she had a conversation with W. A. Pruitt Jr., the company's agent, and that it was distinctly understood that the items of insurance, carrying charges, and interest were included. Code, §§ 20-704(1), 38-502.

Ambiguity has been defined "as duplicity, indistinctness, an uncertainty of meaning or expression;" and we think it can not be gainsaid that this contract was rendered ambiguous by the contradictory statements as to the amount of the purchase-money. *Novelty Hat Manufacturing Co.* v. *Wiseberg,* 126 *Ga.* 800 (55 S. E. 923). Whether or not the testimony would have been admissible under the rule which permits inquiry into the consideration where it is stated merely by way of recital, it was admissible to explain the ambiguity. It is of course true that, if the consideration be stated in a written contract in such manner as to make it one of the terms or conditions of the agreement, a different consideration, whether variant or additional, can not be shown by parol (*Wellmaker* v. *Wheatley,* 123 *Ga.* 201 (2) 51 S. E. 436; *Brosseau* v. *Jacobs Pharmacy Co.,* 147 *Ga.* 185, 93 S. E. 293; *Ramsey-Fender Motor Co.* v. *Chapman,* 46 *Ga. App.* 385 (2) 168 S. E. 92); but this rule in no wise limits or modifies the other rule as to the admissibility of parol evidence to explain ambiguities, latent or patent.

Nor, if testimony is otherwise admissible to explain an ambiguity, would it be rendered inadmissible by a stipulation in the con-

tract to the effect that it expresses "the whole agreement," and that there is no agreement or modification of any kind in connection therewith that is not expressly set forth therein. In other words, if a contract is in fact ambiguous as to some matter, such a stipulation would not prevent explanation in the usual manner. Whether a stipulation could be so framed as to have that effect, manifestly the present one was not designed for any such purpose, and, therefore, evidence to explain the ambiguity would be admissible just as though no such stipulation had been made. Code, § 38-205; *Hartwell Grocery Co.* v. *Mountain City Mill Co.*, 8 Ga. App. 727 (70 S. E. 48); *Porter* v. *Sterling Products Co.*, 40 Ga. App. 522 (2) (150 S. E. 457); *Atlanta Chemical Co.* v. *Hardin Bag Co.*, 49 Ga. App. 748 (176 S. E. 772).

It follows that the trial judge properly admitted the testimony of the defendant over the objection urged, and that the Court of Appeals erred in ruling to the contrary, and in reversing the judgment refusing a new trial upon that ground.

*Judgment reversed. Jenkins, P. J., Duckworth, Atkinson, and Wyatt, JJ., concur.*