74936, 74998. WALTON v. DATRY.
(363 SE2d 295)

BEASLEY, Judge.

On May 8, 1985, Eric Datry, d/b/a Interface Construction Consultants (general contractor), and Edwin Walton (landowner) entered into a contract to renovate Walton's veterinary office. The contract was on an American Institute of Architects document A-11 entitled: "Standard Form of Agreement Between Owner and Contractor where the basis of payment is the cost of work plus a fee. 1978 Edition." Datry in turn engaged Tip Top Roofer, Inc. (subcontractor), to perform roofing repairs and replacement for a contract price of $9,998.

Disputes arose among the three parties regarding performance and payment under the contract, engendering two lawsuits which in turn resulted in the two appeals we now consider. The first suit (now Case No. 74998) was brought by Walton against Datry and set forth claims for breach of contract, accounting, breach of warranty, fraud and punitive damages. Datry answered and counterclaimed for breach of contract, quantum meruit, attorney fees and slander.

In the second action (Case No. 74936) Tip Top filed suit against Walton and Datry alleging that because the contract price for the roofing work had not been paid, Datry was indebted for that amount to Tip Top and Tip Top is entitled to a special lien on Walton's property.

Walton filed its answer along with a counterclaim and a crossclaim against Datry. Datry also answered and counterclaimed and brought a five-count crossclaim against Walton. The fifth count alleged that work done by Tip Top was performed at the instance of Datry on behalf of Walton pursuant to a contract between Datry and Walton which provided for reimbursement of costs incurred by, as well as indemnity for losses and expenses sustained by, Datry; and that Datry was entitled to a judgment over against Walton for any amount found to be due Tip Top.

*Case No. 74936*

Because it involves basically procedural issues, we first consider Tip Top's action against Walton and Datry, and their counterclaims and cross-claims.

After the last answer was filed October 22, 1986, the case was scheduled for trial on December 8 but by consent of the parties was continued. Trial was reset for February 9, 1987. Proposed pretrial orders were filed but not signed by the court. Both Walton and Datry moved to continue the case and on February 9, Walton renewed his motion for continuance. Walton amended his proposal for pretrial order by disclosing additional witnesses on February 10. On that same day Datry filed a motion for the limitation, formulation and simplification of issues. Attached thereto was Datry's motion for summary judgment in the direct suit plus citations to depositions taken in that case.

Datry's motion was granted; the trial court ruled that the written contract was for "cost plus" with no maximum, rather than for a "fixed price" as contended by Walton, and determined that Walton was precluded from offering evidence of prior or contemporaneous representations contradictory to its terms. The trial court also limited the issues between Walton and Datry solely to whether Datry had a claim over against Walton; the remaining issues were left for trial in the other lawsuit between Walton and Datry (Case No. 74998).

The case was then called for trial and the motions for continuance denied. A jury was selected and then excused until the next day. Walton orally moved to dismiss Datry's counterclaim on the ground that Datry had admitted not paying Tip Top and under the terms of the contract could not recover against Walton. This motion was overruled.

The parties entered into a consent judgment whereby Tip Top obtained a judgment against Datry for the price of the roofing work. It also obtained a special lien against Walton's property for that amount and both defendants agreed to indemnify and hold Tip Top harmless as to any claims arising out of the controversy between Walton and Datry.

The parties consented to the dismissal of the jury and for the matter to be determined by the trial court. After a hearing, the trial court entered an order which recited that Walton and Datry had entered into a construction contract which as determined by the ruling on Datry's motion in limine was a "cost plus" rather than a "fixed price" contract; that pursuant to the contract a new roof was put on Walton's premises the cost of which was included in the contract; that under Article 8 of the contract Walton was to pay Datry the cost of work; that this included under "article 8.1.5" the cost of all materials,

supplies and equipment incorporated in the work and under "article 8.1.12" all losses and expenses, "not compensated by insurance or otherwise, sustained by the contractor in connection with the work, provided they have resulted from causes other than the fault or neglect of the contractor, including settlements made with the written consent and approval of the owner." The trial court further found that "reimburse" includes "indemnify or made whole" that "reimburse" is a synonym for "indemnify" which means "to save harmless; to secure against loss or damage." The court reasoned that, since Datry had confessed judgment in favor of Tip Top and Walton had confessed a special lien against his property in favor of Tip Top, the expense of Tip Top's judgment against Datry was a part of the cost to be reimbursed to Datry by Walton. It also found for Datry on the remaining portion of his crossclaim against Walton and entered judgment in his favor.

Walton appealed, enumerating as error: 1) the overruling of his motion for continuance; 2) the sustaining of Datry's motion in limine (motion to limit, formulate and simplify the issues); 3) the entry of judgment in favor of Datry; 4) the denial of Walton's oral motion to dismiss.

1. Because USCR 5 provides that discovery must be commenced promptly and completed within six months after the filing of the answer unless the time has been extended or shortened by court order, Walton urges that it was error to refuse to grant his continuance for additional discovery where six months had not elapsed. Walton's argument concerning his motion for continuance has been decided adversely to his contention by our Supreme Court in *Alexander v. Macon-Bibb County &c. Auth.*, 257 Ga. 181, 184 (5) (357 SE2d 62) (1987): "This rule does not, as appellant suggests, require that he be given 6 months in which to complete discovery."

2. Walton urges that Datry's written motion in limine was filed on the day of the trial in violation of Walton's right to five days' notice under OCGA § 9-11-6 (d) which specifies: "A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than five days before the time specified for the hearing, unless a different period is fixed by this chapter or by order of the court." It is also argued that the inclusion of materials from the other case converted the motion into one for summary judgment requiring service 30 days before a hearing. OCGA § 9-11-56 (c).

Motions in limine, which evolved outside the ambit of the Civil Practice Act, invite the court's determination as to admissibility of evidence preliminary to its introduction. *Pierce v. State*, 173 Ga. App. 551, 552 (2) (327 SE2d 531) (1985); *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284, 285 (260 SE2d 20) (1979). In a broad sense the

term refers "to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States,* 469 U. S. 38, 40 n.2 (105 SC 460, 83 LE2d 443) (1984). A motion in limine may be made either in writing or orally at time of trial. *Gosnell v. Waldrip,* 158 Ga. App. 685, 686 (282 SE2d 168) (1981). It is used in two ways: "1) The movant seeks not a *final* ruling on the admissibility of evidence, but only to prevent the mention by anyone, during the trial, of a certain item of evidence or area of inquiry until its admissibility can be determined *during the course of the trial* outside the presence of the jury. [Cits.] 2) The movant seeks a ruling on the admissibility of evidence prior to the trial." *State v. Johnston,* 249 Ga. 413, 415 (3) (291 SE2d 543) (1982).

Here the extrinsic proof offered did not convert the motion into one for summary judgment because such proof is part and parcel of the showing necessary to obtain the preliminary exclusion of evidence via a motion in limine. Neither OCGA § 9-11-12 (b) nor OCGA § 9-11-56 (c) apply.

With regard to OCGA § 9-11-6 (d), we are disinclined to apply it to a motion in limine which frequently is oral, not written, and often is made at the commencement of trial. This would have a negative effect on written motions, for to apply the code section strictly would penalize one who submitted a written motion rather than an oral one which has no time requirement. Moreover, since the issue can always be raised during the trial, a prospective movant need only wait until just before the evidence is sought to be elicited and then make an oral objection. In that instance the party opposing the motion has even less time to prepare a counter showing.

However, even if OCGA § 9-11-6 (d) is applicable a violation is not cause for reversal unless harm be shown. *Burger Chef System v. Newton,* 126 Ga. App. 636, 639 (1) (191 SE2d 479) (1972). The purpose of subsection (d) is to prevent a party from being surprised on the day of the hearing by an affidavit he is not in a position to answer. *Fairington, Inc. v. Yeargin Constr. Co.,* 144 Ga. App. 491 (1) (241 SE2d 608) (1978). See *Southwest Ga. Prod. Credit Assn. v. Wainwright,* 241 Ga. 355, 356 (1) (245 SE2d 306) (1978).

Walton cannot assert he was surprised by the issue raised nor contend he did not have ample time to prepare for it. The primary factor is that only a question of law (i.e., construction of a contract, OCGA § 13-2-1) was presented. See *Phillips v. Marcin,* 162 Ga. App. 202, 204 (2) (290 SE2d 546) (1982), which found no error in ruling on a law issue even though no hearing was held. Walton does not assert the trial court erred in its ruling on the substantive issue, and nothing else appearing, the absence of notice is inconsequential and provides no basis for reversal.

3. & 4. These two grounds can be considered together because they are both based on the argument that the contract required payment before Datry need be reimbursed and Datry was not paid. Thus, Walton proposes that Datry may not recover from him.

This assertion lacks merit. OCGA § 9-11-13 (g) provides: "The cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant." Thus, it contemplates the precise situation here, where liability is sought to be imposed directly on one defendant and he seeks recovery over against the other defendant who agreed to indemnify or otherwise reimburse him. If he is found liable then he is entitled to recover against the other defendant. See *Berry v. Cordell*, 120 Ga. App. 844, 847 (1) (172 SE2d 848) (1969); *Benefield v. Elder Bldg. Supply*, 132 Ga. App. 195, 197-198 (207 SE2d 678) (1974). In this case judgment had been entered in favor of Tip Top against Datry, and Datry was thereby entitled by cross-claim to recover that amount from Walton under the terms of the contract. See, e.g., *Benefield*, supra. Payment shall discharge the lien and the cross-claim judgment insofar as the roofing work is concerned.

### Case No. 74998

This appeal involves the direct proceedings between Walton and Datry. After discovery, Datry filed a motion for partial summary judgment on the issues raised by Walton of cost overages to the contract price and lost income due to untimely completion of the construction. Walton responded to the motion and requested oral argument pursuant to USCR 6.3. Prior to hearing, Walton filed and served his amended complaint plus two affidavits. On the day of the hearing Walton filed exhibits obtained from prior discovery. Datry made a motion to disregard the affidavits for failure to timely file them as required by USCR 6.2 which provides affidavits in response must be filed "not later than 30 days after service of the motion, or on the date of the hearing . . . whichever occurs sooner." The court sustained the motion and refused to consider the affidavits. Walton then tendered the two affidavits in opposition to the motion for summary judgment but the court refused to admit them. The court granted Datry's motion for partial summary judgment and Walton appeals from that judgment.

Walton asserts error 1) in the trial court's grant of Datry's partial motion for summary judgment and 2) the refusal to consider Walton's two affidavits tendered in opposition to the motion for summary judgment prior to the hearing thereof.

While USCR 6.2 requires opposing affidavits to be filed not later

than 30 days after service of a summary judgment motion, OCGA § 9-11-56 permits the adverse party to serve affidavits prior to the day of hearing. In the event of a conflict the rules yield to substantive law. *Russell v. Russell*, 257 Ga. 177, 178 (356 SE2d 884) (1987).

But the primary and dispositive issue involves the construction of the written contract between the parties and whether the court properly held that the contract was complete and entire and not subject to extrinsic proof of its terms.

5 (a). "Contracts, even when ambiguous, are to be construed by the court and no jury question is presented unless after application of applicable rules of construction an ambiguity remains." *Travelers Ins. Co. v. Blakey*, 255 Ga. 699, 700 (342 SE2d 308) (1986). The contract terms here were within the trial court's domain.

Walton contends that the contract price was for a certain fixed amount, $65,442, plus 10 percent of that amount reduced by negotiation to $6,400 for a total of $71,842. The contract is entitled: for cost of work, plus a fee. However, Walton points out that paragraph 5.2, which reads as follows, was left blank so as to admit parol evidence to establish a maximum, agreed-upon amount: "The maximum cost to the Owner, including the Cost of the Work and the Contractor's Fee, is guaranteed not to exceed the sum of      dollars ($     ); such Guaranteed Maximum Cost shall be increased or decreased for Changes in the Work as provided in Article 7. (Here insert any provision for distribution of any savings. Delete Paragraph 5.2 if there is no Guaranteed Maximum Cost.)" The contract also contains a "merger clause" in Paragraph 16.2: "The Contract Documents, which constitute the entire agreement between the Owner and the Contractor, are listed in Article 1 and, except for Modifications issued after execution of this Agreement, are enumerated as follows: The contract. The drawing."

Datry contends that this clause prevents the utilization of extrinsic proof to establish the contractual terms. But *Wood v. Phoenix Ins. Co.*, 199 Ga. 461, 468 (2) (34 SE2d 688) (1945) held: "[I]f testimony is otherwise admissible to explain an ambiguity, . . . it [would not] be rendered inadmissible by a stipulation in the contract to the effect that it expresses 'the whole agreement,' and that there is no agreement or modification of any kind in connection therewith that is not expressly set forth therein. In other words, if a contract is in fact ambiguous as to some matter, such a stipulation would not prevent explanation in the usual manner." Accord *Baker v. Jellibeans*, 252 Ga. 458, 459 (2) (314 SE2d 874) (1984); *Hanson v. Stern*, 102 Ga. App. 341, 345 (3) (116 SE2d 237) (1960).

Of course, this does not prevent the merger or entire agreement clause from expressing the intent of the parties that the writing was to constitute the sum of the agreement. "The cardinal rule in the con-

struction of contracts is to ascertain the intention of the parties." *Head v. Hook*, 248 Ga. 818, 819 (285 SE2d 718) (1982). "The language which the parties have used will be looked to for the purpose of finding that intention, which when it is once ascertained will prevail over all other considerations, in determining the nature of the agreement." *McKibben v. Fourth Nat. Bank of Macon*, 32 Ga. App. 222 (1) (122 SE 891) (1924). Accord *Undercofler v. Whiteway Neon Ad*, 114 Ga. App. 644, 645 (2) (152 SE2d 616) (1966).

The question remaining is whether leaving the blank spaces in paragraph 5.2 of the contract creates an ambiguity which may be explained by parol. A word or phrase is ambiguous "when it is of uncertain meaning and may be fairly understood in more ways than one." *Dorsey v. Clements*, 202 Ga. 820, 823 (44 SE2d 783) (1947). Language which is unambiguous will not be construed as ambiguous based on extrinsic circumstances. *Emerson v. Cousins Mtg. &c. Investments*, 145 Ga. App. 883, 885 (1) (244 SE2d 890) (1978).

Under normal circumstances, the fact that paragraph 5.2 was left blank would simply mean that there was no maximum amount. Despite the contract language requiring deletion of 5.2 if there is no Guaranteed Maximum Cost, examining the contract within its "four corners" (see *Stephens v. Parrino & Ware*, 138 Ga. App. 634 (226 SE2d 809) (1976)) leads to the conclusion that the failure to fill in the blanks in effect did delete paragraph 5.2, for there is no provision setting forth a limit or a maximum amount. The opportunity was patently presented on the face of the contract form to include a maximum but it was rejected by nonuse.

"The rule which permits parol proof in cases of apparent incompleteness in written statements of the obligations of the parties, denies parol proof, variant from the written terms, which imposes additional and other terms dependent upon a prior or contemporaneous parol agreement." *Roberts v. Investors Savings Co.*, 154 Ga. 45 (4) (113 SE 398) (1922). Moreover, if extrinsic proof were considered, Walton states he signed the instrument with the understanding that paragraph 5.2 would be filled in. "If a writing is signed with blanks left to be filled in by the other party, the person signing is bound by it." *Butts v. Atlanta Fed. &c. Assn.*, 152 Ga. App. 40, 42 (262 SE2d 230) (1979).

The trial court did not err in granting the motion for partial summary judgment on the contract.

(b). Insofar as Walton sought recovery of lost profits, the following rules are applicable. "Damages growing out of a breach of contract, in order to form the basis of a recovery, must be such as can be traced solely to the breach, must be capable of exact computation, must have arisen naturally and according to the usual course of things from such breach, and must be such as the parties contemplated as a

probable result of the breach." *Sanford-Brown Co. v. Patent &c. Co.*, 199 Ga. 41 (33 SE2d 422) (1945). Accord *Crawford & Assoc. v. Groves-Keen*, 127 Ga. App. 646, 650 (1) (194 SE2d 499) (1972). One of the reasons is that "[t]he jury must be able to calculate the amount of loss from the data furnished, and will not be placed in a position where an allowance of the loss is based on guesswork." *Roland v. Byrd*, 163 Ga. App. 408, 410 (294 SE2d 626) (1982). "The party claiming damages carries not only the burden of proving the damages, but also furnishing the jury with sufficient data to estimate the damages with reasonable certainty." *Moultrie Farm Center v. Sparkman*, 171 Ga. App. 736, 740 (6) (320 SE2d 863) (1984).

Even if we consider Walton's affidavit, which the trial court refused to admit, the proof failed to come within the requirements of *Johnston v. Lyon*, 173 Ga. App. 524, 525 (2) (327 SE2d 519) (1985). Walton failed to produce figures as to before and after profits which fit the time span for which recovery was sought. Moreover, applying the rule that a party's contradictory testimony, unexplained, will be construed against him (see *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986))[1] the viability of any lost profits is undermined.

The trial court correctly determined there was no issue as to lost profits. *Hip Pocket, Inc. v. Levi Strauss & Co.*, 144 Ga. App. 792, 794 (2) (242 SE2d 305) (1978).

6. Because the evidence contained in the affidavits would have had no effect on the trial court's ruling, the failure to consider the affidavits was not harmful error.

*Judgments affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 6, 1987 —
REHEARINGS DENIED NOVEMBER 25, 1987 — ▮▮▮▮▮▮▮▮▮

*Neil L. Heimanson*, for appellant.
*A. Joseph Nardone, Jr.*, for appellee.

---

[1] *Prophecy Corp.* held that the Court of Appeals had incorrectly interpreted *Burnette Ford v. Hayes*, 227 Ga. 551 (181 SE2d 866) (1971). It did not discuss the similar interpretation that the Supreme Court had likewise given *Burnette*. See *Jordan v. Ailstock*, 230 Ga. 67, 70 (195 SE2d 425) (1973). We assume that holding has been overruled sub silentio.