A90A0206. BEMCO MATTRESS COMPANY et al. v. SOUTHEAST BEDDING COMPANY.

(396 SE2d 238)

COOPER, Judge.

Appellants are Stuart Industries, Inc. ("Stuart"), its subsidiary, Bemco Mattress Company ("Bemco"), and an officer of Bemco. Appellee is Southeast Bedding Company ("Southeast"). Stuart and Southeast were awarded franchises from Bemco Associates, Inc., giving them the right to manufacture and sell bedding products bearing the Bemco trademark. Southeast manufactures and sells exclusively under the Bemco label, but Stuart, which has its own registered trademark, manufactures and sells under both the Bemco and Stuart labels.

Southeast purchased the assets of Bemco and entered into an agreement with Stuart which contained a covenant not to compete. The covenant not to compete provided in relevant part: "Seller agrees to transfer its interest in and its rights in the territory identified on Exhibit "A" attached hereto and made a part hereof to Purchaser. Purchaser is authorized to use the Stuart label in this territory for a period of three (3) years from Closing. Seller agrees that the Stuart label will not be merchandised in this territory by Seller or any individual or company affiliated with Seller for a period of ten (10) years from the Closing Date and in the event any Stuart label units are sold and/or delivered within the territory during such ten (10) year period, Seller shall pay to Purchaser a fee of Twenty-Five Dollars (25.00) per unit which shall come due immediately as liquidated damages. . . ." Southeast, alleging that Stuart breached the covenant not to compete by selling units of bedding under the "Stuart label" within the territory specified in the agreement, brought an action against Stuart and Bemco seeking damages. Subsequently, Southeast amended its complaint, adding counts of fraud and bad faith, and also adding an officer of Bemco as a defendant.

The dispute arose from the parties' disagreement about the meaning of the terms "Stuart label," "unit" and "sold and/or delivered." Stuart contends that "Stuart label" means only the Stuart "retail label" and does not include the "law label," which is a label re-

quired by OCGA § 31-25-6 to be placed on all items of bedding showing the contents of the bedding and the manufacturer. Stuart also contends that "unit" means a mattress and box spring as a set as opposed to an individual mattress or box spring. With respect to the phrase "sold and/or delivered," we find that the stipulation entered into between the parties setting forth the total number of mattresses and box springs sold and delivered within the territory is controlling. Finally, Stuart contends that the territorial limitation is too broad, thus voiding the entire contract. The trial court, construing the contract in favor of Southeast, granted its motion for partial summary judgment on the issue of the breach of the covenant not to compete.

1. "There are three steps in the process of contract construction. The trial court must first decide whether the contract language is ambiguous; if it is ambiguous, the trial court must then apply the applicable rules of construction (OCGA § 13-2-2); if after doing so the trial court determines that an ambiguity still remains, the jury must then resolve the ambiguity. [Cit.]" *Travelers Ins. Co. v. Blakey*, 180 Ga. App. 520 (349 SE2d 474) (1986). The parties urge different meanings for the terms "Stuart label" and "unit." For purposes of determining whether an ambiguity exists these terms must not be looked at in isolation, but in the context of the entire agreement. *Nationwide Mut. Fire Ins. Co. v. Tomlin*, 181 Ga. App. 413 (1) (352 SE2d 612) (1986). When viewing the agreement as a whole, we conclude as the trial court did that an ambiguity does exist. Stuart argues that the agreement should be construed in its favor because it was drafted by Southeast. While it is generally true that ambiguous terms of a contract are to be construed against the party drafting them (OCGA § 13-2-2 (5)), "[t]he fundamental rule, the rule which swallows up almost all others in construing a paper, is to give it that meaning which will best carry into effect the intent of the parties." *Paul v. Paul*, 235 Ga. 382, 384 (219 SE2d 736) (1975). " 'The language which the parties have used will be looked to for the purpose of finding that intention, which when it is once ascertained will prevail over all other considerations, in determining the nature of the agreement.' [Cits.]" *Walton v. Datry*, 185 Ga. App. 88 (5a) (363 SE2d 295) (1987).

(a) With respect to the term "Stuart label," the interpretation argued by Stuart would not, as a practical matter, prevent Stuart from competing with Southeast. Stuart would still be able to sell bedding units in the restricted area as long as they did not have the retail or product label attached to them. The terms of the agreement should be given a construction which will advance its beneficial purpose. *Consolidated Freightways Corp. v. Williams*, 139 Ga. App. 302 (1) (228 SE2d 230) (1976). An officer of Bemco, who was involved in transactions relating to the sale of Bemco, acknowledged that the interpretation of "Stuart label" given by Southeast is consistent with

his understanding of the agreement prior to seeing the contract. The officer further admitted that after seeing the agreement, he never clarified the meaning of "Stuart label" because the way it was drafted worked in favor of Stuart. " ' "(T)he intention of the parties may differ among themselves; in such cases the meaning placed on the contract by one party and known to be thus understood by the other party shall be held as the true meaning." ' [Cit.]" *Bulloch Academy v. Cornett*, 184 Ga. App. 42, 44 (360 SE2d 615) (1987). We are satisfied that the trial court's construction of "Stuart label" properly effectuates the intent of the parties, and does not impose such a construction as would defeat the underlying purpose of the agreement.

(b) In support of its contention that the term "unit" means individual mattress and box spring, Southeast submitted evidence by way of an affidavit of the corporate officer of an international trade association of mattress manufacturers, that the term "unit" refers to an individual mattress or box spring and is not used to refer to a mattress and box spring set as one unit. " 'Ambiguities in terms used in written contracts, and their meanings as understood in the trade and by the contracting parties, may be explained by parol proof of this trade usage and custom.' [Cit.]" *Pace Constr. Corp. v. Houdaille &c. Indus.*, 247 Ga. 367, 368 (276 SE2d 568) (1981). We find no error with the trial court's construction of the term "unit."

(c) Stuart's argument that the time and territory restrictions in the covenant not to compete are unreasonable is without merit. "A different standard is applied in determining the validity of covenants contained in employment contracts and those which are a part of a contract to sell a business." *Watson v. Waffle House*, 253 Ga. 671 (2) (324 SE2d 175) (1985). Greater latitude is allowed in covenants related to the sale of a business, than in those ancillary to an employment contract. See *Farmer v. Airco, Inc.*, 231 Ga. 847, 849 (204 SE2d 580) (1974). Considering the nature of the bedding industry together with the character and location of the business purchased, we find the time and territory restrictions in the covenant to be reasonable. Contrary to Stuart's assertions, the territory is restricted to that in which Bemco conducted business at the time it was sold and that territory into which Stuart knew Southeast planned to expand. *Jenkins v. Jenkins Irrigation*, 244 Ga. 95 (2) (259 SE2d 47) (1979).

2. For the foregoing reasons, we find no error in the trial court's grant of partial summary judgment to Southeast.

*Judgment affirmed. Banke, P. J., and Birdsong, J., concur.*

DECIDED MAY 23, 1990 —
REHEARING DENIED JULY 25, 1990 — CERT. APPLIED FOR.

*Clark & Clark, Fred S. Clark,* for appellants.
*William E. Dillard III,* for appellee.