A92A1369. CARIBBEAN LUMBER COMPANY, INC. et al.
v. ANDERSON.
(422 SE2d 267)

POPE, Judge.

Defendants/appellants Caribbean Lumber Company, Inc. and Hawthorne Export Lumber Company, Inc. (the "owners") appeal the trial court's grant of summary judgment to plaintiff/appellee M. C. Anderson d/b/a M. C. Anderson Construction Company (the "contractor") and the denial of their motion for summary judgment.

The record shows the owners and the contractor entered into a contract in which the contractor agreed to grade, pave and to install sewer, storm drainage, mechanical, electrical, and water systems on an undeveloped industrial lot in Pooler, Georgia owned by the owners (the "project"). The grading portion of the contract stated the contractor would be responsible for removing unsuitable material (certain types of soil) and replacing it with suitable soil. The contract was drafted by the engineering firm of Hussey, Gay, Bell & DeYoung, and Benjamin Gay was the engineer for the project (the "engineer").

The bidding documents made available to the potential contractors for the project stated that the estimated amount of unsuitable material located on the project site was 10,000 cubic yards. In his successful bid, the contractor bid $9.90 per cubic yard to remove and replace the unsuitable material with suitable soil. It is undisputed that there were unusually wet conditions on the project site while the grading work was performed. By letter dated January 5, 1990, the contractor informed the engineer they were rapidly approaching the estimated quantity of unsuitable material on the project site and stated that the actual quantity removed would probably be at least double the original 10,000 cubic yard estimate. The engineer testified in January 1990 he informed the owners' representative for the project, Waymon Shuman, that there was going to be an overrun but he

was unsure if the overrun would be serious. Shuman submitted an affidavit in support of the owners' motion for summary judgment in which he averred that he was not informed by the engineer, the contractor or their representatives that the amount of excavated material exceeded 10,000 cubic yards or that there had been a cost overrun.

On March 7, 1990, the engineer and contractor determined that 15,013 cubic yards of unsuitable material had been removed and replaced on the project. On April 6, 1990, the owners were informed of the amount of the overrun. The owners refused to pay the contractor for the additional 5,013 cubic yards of unsuitable material. The contractor filed a lien against the property in the amount of $73,883.70, based on 7,463 cubic yards of unsuitable material at $9.90 per cubic yard. The contractor also filed suit against the owners and sought the amount of the lien in his complaint. In his motion for summary judgment, however, the contractor sought only $49,628.70 for replacement of the additional 5,013 cubic yards of unsuitable material, which he claims was authorized by the engineer as the owners' agent. This appeal arises from the trial court's grant of plaintiff's motion for summary judgment.

1. The trial court based its grant of summary judgment in favor of the contractor on the following language from the contract: "The Engineer shall in all cases determine the amount, quality, acceptability and fitness of the several kinds of work and materials which are to be paid for under this contract, shall determine all questions in relations to said work and decide every question of the fact which may arise relative to the fulfillment of this contract on the part of the Owner and on the part of the Contractor. His estimate and decisions shall be final and conclusive upon both parties of this contract."

The owners contend the trial court erred in granting the contractor summary judgment based on this provision because it is void as against public policy. We have held that provisions in contracts which attempt to divest the courts of jurisdiction concerning a dispute arising from a contract or a provision that makes the decision of a certain person conclusive as to all disputes arising in connection with an agreement are void as against public policy. *Sasser & Co. v. Griffin*, 133 Ga. App. 83 (210 SE2d 34) (1974); *Wright v. Cecil A. Mason Constr. Co.*, 115 Ga. App. 729 (155 SE2d 725) (1967); *Gettys v. Mack Trucks*, 107 Ga. App. 694 (131 SE2d 205) (1963). It is clear from reading the provision above in context with the other contractual provisions that it does not attempt to divest our courts of jurisdiction or make the decision of the engineer conclusive as to all disputes arising from this contract. Rather, the purpose of the provision is to give the engineer authority to make the decisions that must be made daily on a construction site without the constant need to consult with representatives of the owners and the contractors. Evidence of this provi-

sion's limitations is the fact that the parties do not contend the trial court was without authority to resolve the dispute giving rise to this appeal.

2. It does not follow, however, that summary judgment was properly granted to the contractor in this case. It is axiomatic that the owners are only bound by the acts of the engineer which are within the scope of his actual or apparent authority. OCGA § 10-6-51. Finding that the engineer had authority pursuant to the contract provision set forth above to approve the overrun and that he had done so, the trial court held the contractor was entitled to judgment in his favor. In determining the authority of the engineer to approve the cost overrun in this case, however, the trial court failed to consider other pertinent provisions of the contract. "The construction which will uphold a contract in whole and in every part is to be preferred, and the whole contract should be looked to in arriving at the construction of any part." OCGA § 13-2-2 (4). *Bemco Mattress Co. v. Southeast Bedding Co.*, 196 Ga. App. 509, 510 (1) (396 SE2d 238) (1990). The definition of unsuitable material in the general excavation, filling and grading portion of the contract specifically states that "[e]xcess water in material will not be a basis for establishing unsuitable material regardless of gradation." Our review of the record reveals in the same section of the contract quoted in Division 1, supra, there is also a provision which states "[n]o oral statement of any person whomsoever in any manner or degree shall modify or otherwise affect the terms of this Contract."[1] In the section of the contract concerning measurement and payment, the paragraph dealing with removal of unsuitable subgrade material provides in pertinent part "[u]nsuitable material will not . . . exceed the quantity of unsuitable material in the Bid Schedule [10,000 cubic feet] by more than 25 percent without a change order."

It is undisputed a valid change order was not executed for the disputed work. Furthermore, in his affidavit in support of the owners' motion for summary judgment and in opposition to the contractor's motion for summary judgment, Shuman stated that the owners had never authorized the contractor to change the definition of "unsuitable material" in the contract or to waive any requirement in the contract that the engineer's orders should be in writing or that change orders were needed as required by the contract.

When the contract is construed as a whole, along with Shuman's affidavit, we hold that there remain issues of material fact concerning the scope of the engineer's actual and/or apparent authority to waive

---

[1] Waiver of a written modification requirement in a contract may be established through the course of conduct between the parties. *Biltmore Constr. Co. v. Tri-State Elec. Contractors*, 137 Ga. App. 504, 506 (1) (224 SE2d 487) (1976).

or change certain contractual provisions and, if he had authority to waive or change certain contractual provisions, which ones were waived by him. Accordingly, the grant of the contractor's motion for summary judgment was error.

*Judgment reversed. Carley, P. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 8, 1992.

*Brennan, Harris & Rominger, Richard J. Harris,* for appellants.
*Oliver, Maner & Gray, James P. Gerard,* for appellee.