394 S.E.2d 79

**E. Byrd DANIEL**

v.

**Cecil D. STEVENS and the Guaranty National Bank, a National Bank Association.**

**No. 19042.**

Supreme Court of Appeals of West Virginia.

May 18, 1990.

Paul A. Ryker, Huntington, for E. Byrd Daniel.

Richard Mills, Rood & Mills, Huntington, for Cecil D. Stevens.

John R. Cyrus, Lockwood, Egnor, Gardner & Cyrus, Huntington, for Guaranty National Bank.

McHUGH, Justice:

This appeal involves the enforceability of a security interest in certain collateral, where the filing and other requirements of the Uniform Commercial Code for perfecting the security interest have been met, at least as to one debtor, but where the buyer claims that the secured party has told the buyer that the security interest in the collateral has been "released" prior to the purchase of the collateral by the buyer from the debtor.[1] Agreeing with the Circuit Court of Cabell County, West Virginia, that there is no genuine issue as to any *material* fact and that the bank as the secured party is entitled to a judgment as a matter of law, we affirm the entry of summary judgment in favor of the bank and reject the equitable estoppel argument and the other arguments of the appellant as the buyer, for the reasons stated herein.

I

■ One of the appellees, Cecil D. Stevens ("the debtor") owned a certain forty-two-foot houseboat. The debtor had obtained loans from the other appellee, The Guaranty National Bank, of Huntington, West Virginia ("the bank" or "the secured party"), beginning in 1971. In 1983 the bank consolidated and refinanced the debtor's outstanding loans into one loan in the amount of $163,000.00. That loan was evidenced by, among other things, a security agreement, signed by the debtor, dated November 3, 1983, with the houseboat as collateral. A financing statement listing the houseboat as collateral had been filed previously, on July 7, 1983, in the office of the Clerk of the County Commission of Cabell County, West Virginia, and in the office of the Secretary of State of the State of West Virginia.[2] The delay from July, 1983, when the financing statement was filed, to November, 1983, when the security agreement was signed, was caused by the debtor's lengthy delay in signing the security agreement.[3]

The debtor sold the houseboat nearly four years later, on September 10, 1987, to the appellant, E. Byrd Daniel, for $28,000.00. The debtor had told the appellant about the bank's "lien" against the houseboat prior to the sale. Moreover, at the time of the sale the aforementioned financing statement listing the houseboat as collateral was duly of record in the aforestated two offices, and was still effective under *W.Va.Code*, 46–9–403(2) [1974], which provides that a filed financing statement is effective for a period of five years from the date of filing, here, five years after July 7, 1983.[4] *No* termination statement had been filed. Such a statement would have shown that the bank as the secured party no longer claimed a security interest under the financing statement. *See W.Va.Code*, 46–9–404(1) [1974].[5]

According to the depositions, the appellant claims that the bank's loan officer had

---

**1.** A "security interest" is "an interest in personal property or fixtures which secures payment or performance of an obligation." *W.Va.Code*, 46–1–201(37) [1979] (in part).

**2.** The financing statement was filed in the proper places, that is, in the office of the secretary of state and in the office of the clerk of the county commission of the county in which the debtor resides. *See W.Va.Code*, 46–9–401(1)(c) [1974] (now *W.Va.Code*, 46–9–401(1)(a) [1989]) (for collateral which is "consumer goods," as defined in *W.Va.Code*, 46–9–109(1) [1963] and 46–9–105(1)(h) [1979]).

**3.** *W.Va.Code*, 46–9–402(1) [1974] explicitly authorizes a *financing statement* to be *filed before* a *security agreement is made* or a security interest otherwise attaches. However, a security interest is not *perfected* (enforceable against third parties) until, *inter alia*, it has *attached, W.Va.Code*, 46–9–303(1) [1963], and a security interest in collateral in the possession of the debtor attaches when, *inter alia*, the debtor signs a security agreement. *W.Va.Code*, 46–9–203(1)(a) & –203(2) [1979]. Accordingly, in this case the security interest in the houseboat was perfected on November 3, 1983, when the debtor signed the security agreement, even though the financing statement was filed on July 7, 1983.

**4.** The effective period of an initial financing statement may be extended for successive five-year periods by timely filing continuation statements. *See W.Va.Code*, 46–9–403(3) [1974].

**5.** *No* written "release" had been filed either. Under *W.Va.Code*, 46–9–406 [1974], a secured party may by a signed statement release all or a part of any collateral described in a filed financing statement. The written release is to be filed in the same office(s) where the financing statement is filed.

told the appellant over the telephone in late August, 1987, prior to the sale of the houseboat by the debtor to the appellant in September, 1987, that although there had been a "lien" on the boat in favor of the bank, it had been "released." The bank's loan officer in his deposition denied making this statement.

The appellant admits that he did not search the records of the aforestated two offices to confirm the alleged oral statement of the bank's loan officer that the security interest had been "released," i.e., that a termination statement or a written release had been filed. Instead, the appellant claims he was entitled to rely upon such oral statement.

The appellant brought a declaratory judgment action to determine the validity and enforceability of the bank's security interest in the houseboat. On the day of the scheduled trial and immediately prior to the start thereof, the bank presented a written motion *in limine* to prevent the appellant from introducing evidence of the purported oral statement by the bank's loan officer that the security interest had been "released." The trial court (the Circuit Court of Cabell County) agreed with the bank that such evidence, even if found to be true, would be insufficient as a matter of law to estop the bank from enforcing its security interest. The trial court therefore granted the bank's motion *in limine.* Upon the appellant's request, the trial court considered its ruling to be the equivalent of granting a motion for an appealable partial summary judgment to the bank.[6]

## II

■ The appellant argues that the trial court improperly entered summary judgment for the bank because the alleged oral statement by the bank's loan officer that the security interest had been "released,"

if assumed to be true for purposes of the pretrial motion, was the type of matter upon which the appellant was entitled to rely and would, therefore, equitably estop the bank from enforcing the security interest in the houseboat. We disagree.

At the outset it is significant to state two fundamental provisions of article 9 of the Uniform Commercial Code, on "Secured Transactions," as adopted in this state, with respect to the priority in a conflict between a perfected secured creditor and a subsequent purchaser of the collateral from the debtor.[7] First, *W. Va. Code,* 46–9–306(2) [1974] provides: "Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." In the present case the security agreement proscribed the sale of the houseboat without the prior written consent of the bank as the secured party. The bank did not give such written consent, and nothing in the record indicates that the bank otherwise authorized the sale.[8] Second, even when the secured party does not authorize the sale or other disposition of the collateral, *W. Va. Code,* 46–9–307(2) [1987] provides:

In the case of consumer goods [in the hands of the seller], a buyer takes free of a security interest even though perfected [without filing, such as a purchase money security interest,] if he [or she] buys *without [actual] knowledge* of the security interest, for value and for his [or her] own personal, family or household purposes *unless prior to the purchase the secured party has filed a financing statement covering such goods.*

---

6. The appellant had also included in his action a claim for damages against the debtor. This appeal does not involve that claim.

7. The West Virginia codification of the Uniform Commercial Code—Secured Transactions is set forth in *W. Va. Code,* 46–9–101 to 46–9–507, as amended.

8. The appellant as the buyer from the debtor alleges only that the bank's security interest in the houseboat had already been "released" prior to the appellant's purchase.

(emphasis added) Here the appellant admits having actual knowledge of the security interest in the houseboat prior to his purchasing the same, and the bank as the secured party had filed a financing statement covering the houseboat. Therefore, unless the bank is equitably estopped from enforcing its security interest in the houseboat against the appellant, the bank has priority over the appellant as to the houseboat. *See* 9 R. Anderson, *Anderson on the Uniform Commercial Code* §§ 9–307:18, 9–307:21 (3d ed. 1985).[9]

The Court enunciated the elements of equitable estoppel in syllabus point 6 of *Stuart v. Lake Washington Realty Corp.*, 141 W.Va. 627, 92 S.E.2d 891 (1956):

> The general rule governing the doctrine of equitable estoppel is that in order to constitute equitable estoppel or estoppel in pais there must exist a false representation or a concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; *the party to whom it was made must have been without knowledge or the means of knowledge of the real facts;* it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.

(emphasis added) Thus, an equitable estoppel does not arise merely because action was taken in reliance upon a false representation or a concealment of a material fact. Among other things, the party claiming the benefit of the equitable estoppel must show that his or her reliance was reasonable in the sense that he or she did not know, nor reasonably should have known, the true state of affairs: "It is essential to an estoppel by conduct that the party claiming to have been influenced by the conduct of another should not only be destitute of information as to the matter to which such conduct relates, but also without convenient and available means of acquiring such information." Syl. pt. 5, *Atkinson v. Plum*, 50 W.Va. 104, 40 S.E. 587 (1901). *See also* syl. pt. 4, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965) (party asserting equitable estoppel must be "without fault"); *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59 & n. 10, 104 S.Ct. 2218, 2223 & n. 10, 81 L.Ed.2d 42, 51–52 & n. 10 (1984) (if, at the time the party asserting equitable estoppel acted upon the representation or concealment, such party had knowledge of the truth, or had the means by which with reasonable diligence he or she could acquire the knowledge so that it would be negligence on his or her part to remain ignorant by not using those means, such party may not claim to have been misled); *United States v. Walker*, 653 F.Supp. 818, 823 & n. 3 (S.D.W.Va.1987) (Haden, C.J.) (same).

Another point which is important in any case in which an equitable estoppel is claimed is that "[t]he doctrine of estoppel should be applied cautiously and only when equity clearly requires it to be done." Syl. pt. 3, *Humble Oil & Refining Co. v. Lane*, 152 W.Va. 578, 165 S.E.2d 379 (1969). We now proceed to a discussion of whether equitable estoppel may be applied in this case.

One of the purposes of the filing requirements of article 9 of the Uniform Commercial Code, like that of any recording statute, is to protect third parties by providing notice of the existing interest in the collateral to subsequent potential creditors of and purchasers from the debtor. A

---

9. The general rule is that "a security agreement is effective according to its terms between the parties, *against purchasers of the collateral* and against creditors." *W.Va.Code*, 46–9–201 [1963] (emphasis added). *W.Va.Code*, 46–9–306(2) [1974] and *W.Va.Code*, 46–9–307 [1987], discussed immediately above in the text, contain exceptions to the general rule of enforceability provided by *W.Va.Code*, 46–9–201 [1963].

Equitable estoppel, if all of the elements thereof could be shown, would be an alternative defense available to a buyer to avoid a security interest in the collateral perfected prior to the buyer's purchase from the debtor: "Unless displaced by the particular provisions of this chapter, the principles of law and equity, including ... estoppel, ... or other ... invalidating cause shall supplement its [the Uniform Commercial Code's] provisions." *W.Va.Code*, 46–1–103 [1963].

concomitant purpose is to protect the creditor who has perfected a security interest, by giving such creditor priority over almost all subsequent third-party claimants to the collateral, because the creditor has taken action which would put a reasonably diligent searcher on notice of the prior interest in the collateral. *Landon v. Stroud,* 147 Ariz. 208, 211, 709 P.2d 565, 568 (Ct.App. 1985), *review denied* (Ariz. Nov. 13, 1985). *See also* syl. pt. 2, *American National Bank & Trust Co. v. National Cash Register Co.,* 473 P.2d 234 (Okla.1970) (framers of Uniform Commercial Code, by adopting "notice filing" system, intended to protect perfected security interests and at the same time give subsequent potential creditors and other interested persons general information and procedures adequate to enable ascertainment of factual details); *Uniform Commercial Code* § 9–402, 1972 official comment 2, 3A *U.L.A.* 51 (1981) ("notice filing" of "simple" financing statement instead of more detailed security agreement requires subsequent persons to make inquiry as to current status of security interest; statutory procedures enable debtor to require secured party to disclose information and to file termination statement when no outstanding secured obligation or commitment exists).

In light of the fact that one of the purposes of requiring a financing statement to be filed is to protect the secured party against subsequent third-party claimants to the collateral, courts generally do not apply equitable estoppel so as to vitiate the protection of the "notice filing" system. A very similar concept was utilized in a case from this jurisdiction arising prior to the adoption in this state of the Uniform Commercial Code. In syllabus point 3 of *[Troy] Wagon Co. v. Hutton,* 53 W.Va. 154, 44 S.E. 135 (1903), the Court held: "A contract of sale of wagons which reserves title to them until paid for is valid against purchasers from the [original] vendee even without other notice than that given by its record." The Court stressed the duty of inquiry: "This contract follows up the property in the hands of purchasers [from the original vendee]. They must look to the record. It may be hard on them; but they must in-

quire." 53 W.Va. at 157, 44 S.E. at 136. It was also held that there was no waiver of an interest in the *collateral* despite the language in the contract that if sales were made by the original vendee before payment in full to the original vendor, the original vendor would have an interest in the *proceeds.* Instead, as is the usual rule now under section 9–306(2) of the Uniform Commercial Code, the secured party was entitled to look to the collateral or to the proceeds.

Courts in other jurisdictions generally have refused to apply equitable estoppel to defeat a prior perfected security interest, where the party claiming the equitable estoppel has failed to ascertain the facts from the public records or has failed to take reasonable steps to protect himself or herself, such as by not committing until a termination statement or a written release has been filed. *See, e.g., Lafayette Production Credit Association v. Wilson Foods Corp.,* 687 F.Supp. 1267, 1276–77 (N.D.Ind.1987) (applying Indiana law); *Circle 76 Fertilizer, Inc. v. Nelsen,* 219 Neb. 661, 666–67, 365 N.W.2d 460, 465 (1985); *Provident Finance Co. v. Beneficial Finance Co.,* 36 N.C.App. 401, 404–05, 245 S.E.2d 510, 513–14, *petition for discretionary review denied,* 295 N.C. 549, 248 S.E.2d 728 (1978); *Peoples Bank & Trust v. Reiff,* 256 N.W.2d 336, 344 (N.D.1977); *Pacific National Bank v. Richmond,* 12 Wash.App. 592, 594, 530 P.2d 718, 720 (1975). *See generally* 2 J. White & R. Summers, *Uniform Commercial Code* §§ 26–12, 26–15, 26–20 (3d ed.1988) (in a conflict between two innocent parties, the one a perfected secured creditor who has not authorized the debtor to sell and the other a subsequent buyer from the debtor, the perfected secured creditor is usually the winner; if the secured creditor has filed a financing statement, no subsequent party has a superior interest under section 9–307(2) of the Uniform Commercial Code; the important strength of article 9 of such code has been the certainty of its priority rules, without undermining the same by applying estoppel, etc.); R. Hillman, J. McDonnell & S. Nickles, *Common Law*

*and Equity Under the Uniform Commercial Code* para. 24.04[2][c] (1985 & Supp. 1989) (enforcement of prior perfected security interest will not be estopped if subordinate claimant's reliance on secured party's conduct was unreasonable).

■ The *Provident Finance* case contains this insightful language:

> Defendant [the subsequent creditor] also argues that plaintiff [the prior creditor] no longer has priority because plaintiff's employee informed defendant that the Carlyles [the debtors] had paid off the 1973 debt.... The real problem is that defendant ... ignored the law. It would have been a simple matter for defendant to have required the Carlyles to obtain a termination statement prior to making the loan. Plaintiff would have been required by law to furnish the Carlyles such a termination statement [if the plaintiff as the secured party was no longer entitled to claim a security interest under the financing statement]. Defendant had more than ample opportunity to protect itself at little or no cost. Defendant failed to do so. We will not undermine the integrity of the notice filing system established under the U.C.C. to aid [parties] who disregard the law and fail to help themselves.

36 N.C.App. at 405, 245 S.E.2d at 514. Similarly, in the present case the appellant should have protected himself by utilizing convenient and available means, specifically, by not consummating the purchase of the houseboat from the debtor until a termination statement or a written release had been filed, pursuant to *W. Va. Code*, 46–9–404 [1974] or *W. Va. Code*, 46–9–406

[1974], respectively. It was *not* reasonable for the appellant to rely upon any oral statement that the security interest had been "released." [10]

■ Consistent with the foregoing discussion, this Court holds that equitable estoppel is not a legally cognizable defense to avoid a prior perfected security interest in collateral, where the subsequent creditor or purchaser claims the equitable estoppel based upon an alleged representation by the prior secured party that its security interest had been terminated or released, but where the subsequent creditor or purchaser has not utilized available and convenient means of assuring priority, specifically, waiting until after a termination statement or a written release has been filed, pursuant to *W. Va. Code*, 46–9–404, as amended, or *W. Va. Code*, 46–9–406, as amended, respectively, before acquiring an interest in the collateral from the debtor.

## III

■ The appellant also argues that the bank's security interest in the houseboat is totally invalid and is unenforceable against him because the debtor's *wife* did not *sign* the security agreement or the financing statement despite the fact that she (Virginia M. Stevens) is designated as a "debtor" along with her husband in both of those documents. We do not believe that this possible defect prevents the bank from enforcing—against the appellant, as the subsequent buyer from the debtor(s)—the bank's security interest in the collateral which was already perfected at least as against one of perhaps two co-debtors.

**10.** There are a few cases which have applied equitable estoppel to avoid a prior perfected security interest. *See, e.g., Citizens State Bank v. Peoples Bank*, 475 N.E.2d 324, 327–28 (Ind.Ct. App.1985); *Manson State Bank v. Diamond*, 227 N.W.2d 195, 202–04 (Iowa 1975); *National Bank v. Shaad*, 60 A.D.2d 774, 775, 400 N.Y.S.2d 965, 967 (1977). The courts in these cases failed, however, to consider that the party claiming the equitable estoppel had not utilized convenient and available means to assure priority, such as waiting until after a termination statement or a written release had been filed before acquiring an interest in the collateral from the debtor.

The approach taken in these few cases would encourage litigation based upon claims of equitable estoppel in nearly every case where a termination statement or a written release had not been filed, so as to defeat a prior perfected security interest.

The same approach taken in these few cases would also potentially undermine the recording acts applicable to interests in real property, for the same claim could be made that a deed of trust, for example, had been released, according to alleged representations of the secured party, even though no release of the deed of trust had been recorded.

The record does not establish whether Mrs. Stevens was a co-owner of the houseboat along with Mr. Stevens, her husband. Assuming *arguendo* that she was, the fact that she did not sign the security agreement or the financing statement would *not* inure to the benefit of the appellant, that is, such defect as between the bank and *Mrs.* Stevens would not negate the fact that the appellant had both actual knowledge and constructive notice (through filing of the financing statement) of the bank's prior perfected security interest in the houseboat to the extent of *Mr.* Stevens' ownership interest in that collateral. *See Personal Thrift Plan of Perry, Inc. v. Georgia Power Co.*, 242 Ga. 388, 390, 249 S.E.2d 72, 75 (1978); *United States v. Ballard*, 645 F.Supp. 788, 790–91 (D.Mont. 1986) (applying Montana law); *Clearfield State Bank v. Contos*, 562 P.2d 622, 625 (Utah 1977).

 In accordance with these authorities this Court holds that the husband's signature on the financing statement as a "debtor" is sufficient notice to interested persons that the secured party has a valid security interest in the listed collateral to the extent of the husband's ownership interest therein, even if the wife is a co-owner of the collateral and a co-debtor and she has not signed the financing statement. In those circumstances interested persons cannot successfully claim the total invalidity of the security interest based upon the allegation or the fact that the wife did not sign the financing statement as another "debtor," as required by *W.Va.Code,* 46–9–402(1), as amended.[11]

## IV

The appellant finally argues a procedural point, specifically, that the bank's written motion *in limine,* to exclude evidence of the alleged oral statement of the bank's loan officer that the security interest had been "released," presented immediately prior to the start of the scheduled trial, should not have been entertained by the trial court because the bank did not serve notice of that motion upon the appellant as allegedly required by procedural rules. We believe this argument is without merit in this particular case.

 A motion *in limine* is a procedure which enables the trial court to become

---

11. *W.Va.Code,* 46–9–105(1)(d) [1979] defines "debtor," for purposes of the secured transactions article, to mean

> the person who owes payment or other performance of the obligation secured, whether or not he [or she] owns or has rights in the collateral, and includes the seller of accounts, or chattel paper. Where the debtor and the owner of the collateral are not the same person, *the term 'debtor' means the owner of the collateral in any provision of the article dealing with the collateral,* the obligor in any provision dealing with the obligation, and may include both where the context so requires[.]

(emphasis added)· Because the purpose of a financing statement is to alert potential creditors and purchasers that a prior security interest already encumbers the collateral, the section of the Uniform Commercial Code, namely, section 9–402(1), requiring the debtor's signature on the financing statement is a "provision of the article dealing with the collateral," within the meaning of section 9–105(1)(d). Therefore, for purposes of signing the financing statement, the term "debtor" means an owner of the collateral. *In re Davison,* 738 F.2d 931, 934 (8th Cir.1984) (applying Missouri law).

Thus, *if* Mrs. Stevens had an ownership interest in the houseboat, the bank should have required her signature, as well as her husband's, as "debtors" on the financing statement and on the security agreement, *see W.Va.Code,* 46–9–203(1)(a) [1979]; without her signature on those documents, the bank's security interest would not be valid or enforceable as against *her* ownership interest in the houseboat, a matter which *she* could raise in appropriate proceedings (she was not named as a party to this action). *See Casco Bank & Trust Co. v. Cloutier,* 398 A.2d 1224, 1232–33 (Me.1979); *In re Davison,* 738 F.2d 931, 936 (8th Cir.1984) (applying Missouri law); *Provident Finance Co. v. Beneficial Finance Co.,* 36 N.C.App. 401, 406–08, 245 S.E.2d 510, 514–15, *petition for discretionary review denied,* 295 N.C. 549, 248 S.E.2d 728 (1978); *Clearfield State Bank v. Contos,* 562 P.2d 622, 625 (Utah 1977). *See generally* annotation, *Sufficiency of Debtor's Signature on Security Agreement or Financing Statement Under UCC §§ 9–203 and 9–402,* 3 A.L.R. 4th 502 (1981 & Supp. 1989), particularly § 17 on omission of signature of debtor's spouse; annotation, *Sufficiency of Designation of Debtor or Secured Party in Security Agreement or Financing Statement Under UCC § 9–402,* 99 A.L.R.3d 478 (1980), particularly § 21 on addition or omission of name of party other than debtor, including name of debtor's spouse.

acquainted with a potentially troublesome evidentiary issue in advance of the offer of the evidence. Rule 103(c) of the *West Virginia Rules of Evidence* expressly encourages the presentation of pretrial motions *in limine* in order to prevent the jury from being exposed to inadmissible evidence. *Wimer v. Hinkle*, 180 W.Va. 660, 662 & n. 3, 379 S.E.2d 383, 385 & n. 3 (1989).

Under Rule 7(b)(1) of the *West Virginia Rules of Civil Procedure*, a motion shall be made in writing, unless it is made during a hearing or trial. Under Rule 6(d) of the *West Virginia Rules of Civil Procedure*, a written motion, other than one which may be heard *ex parte*, and notice of the hearing thereof shall be served ordinarily not later than seven days before the hearing on the motion. The appellant claims that he was entitled to service of notice of the bank's written motion *in limine* at least seven days prior to the same being presented.

■ Any motion, including a motion *in limine*, which, as here, is made during a hearing or trial need not be in writing, according to the terms of Rule 7(b)(1). *Loof v. Sanders*, 686 P.2d 1205, 1214-15 (Alaska 1984). If a motion *in limine* is made during a hearing or trial but, nonetheless, is in writing, service of notice of such motion under Rule 6(d) is not required. To conclude otherwise "would have a negative effect on written motions, for to apply [Rule 6(d)] strictly would penalize one who submitted a written motion rather than an oral one which has no time requirement." *Walton v. Datry*, 185 Ga. App. 88, 91, 363 S.E.2d 295, 298 (1987), *cert. denied*, 185 Ga.App. 911 (Ga. Jan. 13, 1988). *Walton* also states:

> Moreover, since the issue can always be raised [for the first time] during the trial, a prospective movant need only wait until just before the evidence is sought to

be elicited and then make an oral objection. In that instance the party opposing the motion has even less time to prepare a counter showing.

185 Ga.App. at 91, 363 S.E.2d at 298.

Likewise, we hold that notice of a written motion *in limine* presented during a hearing or trial need not be served in accordance with Rule 6(d) of the *West Virginia Rules of Civil Procedure.*

■ In addition, the purpose of Rule 6(d) is to prevent a party from being prejudicially surprised by a motion. When, as here, the party opposing the motion *in limine* does not show that he or she was prejudicially surprised by the issue presented by such motion, the lack of notice in accordance with Rule 6(d) is harmless. *Walton*, 185 Ga.App. at 91, 363 S.E.2d at 298. The record here indicates that counsel for the appellant admitted at the time the motion *in limine* was presented that he had anticipated for months such a motion being made.[12]

As to whether the trial court properly granted summary judgment to the bank, *see W.Va.R.Civ.P.* 56, the controlling principle in this case is stated in syllabus point 1 of *George v. Blosser*, 157 W.Va. 811, 204 S.E.2d 567 (1974): " 'A movant is entitled to summary judgment where the facts established show a right to judgment with such clarity as to leave no room for controversy and show affirmatively that the adverse party cannot prevail under any circumstances.' *Hanks v. Beckley Newspapers Corporation*, 153 W.Va. 834 [, 837, 172 S.E.2d 816, 818] (1970)." *Accord*, syl. pt. 3, *First National Bank v. McGill*, 180 W.Va. 472, 377 S.E.2d 464 (1988); *McCullough Oil, Inc. v. Rezek*, 176 W.Va. 638, 647, 346 S.E.2d 788, 797-98 (1986); syl.,

12. We, like the court in *Dailey v. Multicon Development, Inc.*, 417 So.2d 1106 (Fla.Dist.Ct.App. 1982), are aware of the difference between a motion *in limine* and a motion for summary judgment. A motion *in limine* addresses a relatively narrow evidentiary issue which ordinarily is not dispositive of an entire claim or defense; a motion for summary judgment addresses a relatively broad question of law which goes to the heart of a claim or a defense. *Id.* at 1107. In the present case, however, the *appellant* requested the trial court to consider its ruling to be the equivalent of granting a motion for summary judgment, and in this particular case the exclusion of the evidence in question did have the effect of virtually eliminating the appellant's defense to the bank's prior perfected security interest in the houseboat.

*Bell v. West,* 168 W.Va. 391, 284 S.E.2d 885 (1981).

## V

Based upon all of the above, the final order of the Circuit Court of Cabell County is affirmed.

Affirmed.