UNITED NATIONAL BANK OF PARKERSBURG, W. VA., Appellee,

v.

NORTON MACHINE CO., INC., Appellant.

[Cite as *United Natl. Bank of Parkersburg, W. Va. v. Norton Mach. Co.* (1991), 81 Ohio App.3d 101.]

Court of Appeals of Ohio,
Summit County.

No. 14993.

Decided Aug. 14, 1991.

*Frederick M. Lombardi, Frank G. Mazgaj* and *Alan P. DiGirolamo,* for appellee.

*James W. Slater,* for appellant.

———————

REECE, Judge.

Defendant-appellant, Norton Machine Company, Inc. ("Norton Machine"), appeals the final judgment of the Summit County Court of Common Pleas finding that plaintiff-appellee, United National Bank of Parkersburg, West Virginia ("UNB"), was entitled to accounts receivable as a perfected secured creditor of Mountain State Casting Corporation. Norton Machine contends that its own interest in the collateral, although acquired subsequently, is superior to that of UNB. The parties agree, and we do not doubt, that the substantive law of West Virginia governs this multistate dispute. R.C. 1309.03(C); W.Va.Code 46–9–103(3).

On March 21, 1989, Unicast Acquisitions, Inc. ("Unicast") of Parkersburg, West Virginia, executed a promissory note in favor of UNB for the sum of $425,000. Attached thereto was a security agreement granting UNB an interest in all of Unicast's present and future rights to accounts receivable, as well as other collateral. Financing statements were duly filed with the West Virginia Secretary of State and the appropriate county clerk's office memorializing this arrangement.

Shortly thereafter, Unicast changed its corporate name to Mountain State Casting Corporation ("MSCC"). UNB amended its financing statements on April 20, 1989 to reflect this conversion.

On January 16, 1990, Norton Machine obtained a default judgment against MSCC for $48,025.25. *Norton Machine v. Mountain State Casting Corp.,* Summit C.P. No. CV89–08–2557. Norton Machine then located one of MSCC's debtors, American Longwell Mining Corporation ("American Longwell"), in Virginia and initiated garnishment proceedings. After MSCC failed in an attempt to vacate the judgment, Norton Machine collected the full $48,025.25 directly from American Longwell.

UNB initiated the instant proceedings on July 16, 1990, claiming, among other things, a superior present interest in the American Longwell account over that held by Norton Machine. On September 24, 1990, UNB requested summary judgment on this claim and tendered an affidavit and documents in support. Norton Machine opposed this motion. The trial court granted summary judgment in favor of UNB on January 14, 1991. In a "final appealable order" dated January 22, 1991, the court instructed Norton Ma-

chine to deliver the $48,025.25 collected from American Longwell to UNB. This interlocutory appeal follows.

## Assignment of Error

"The trial court erred in granting summary judgment to the appellee as genuine issues of material facts existed concerning whether the appellee waived its right to enforce its security interest and whether the appellant had the right to garnish and take possession of the debtor's funds in contravention of the appellee's asserted security interest."

█ Pursuant to Civ.R. 56(C), summary judgment is proper if the trial court determines that:

"(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; see, also, *Delker v. Ohio Edison Co.* (1989), 47 Ohio App.3d 1, 2, 546 N.E.2d 975, 976.

The burden of establishing the appropriateness of summary judgment is on the moving party. *Hamlin v. McAlpin Co.* (1964), 175 Ohio St. 517, 26 O.O.2d 206, 196 N.E.2d 781, paragraph two of the syllabus; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. Accordingly, when the party seeking affirmative relief (*i.e.*, plaintiff, counterclaimant, cross-claimant, etc.) invokes Civ.R. 56(A), that party must first demonstrate the absence of any genuine questions of fact upon each material element of the claim. See *Ohio Valley Radiology Assoc., Inc. v. Ohio Valley Hosp. Assn.* (1986), 28 Ohio St.3d 118, 122, 28 OBR 216, 219, 502 N.E.2d 599, 602.

UNB maintains that it has established a perfected security interest in all MSCC's accounts receivable, including that due from American Longwell. Norton Machine, on the other hand, asserts a subsequently acquired judicial lien in the same collateral. UNB does not dispute Norton Machine's status. W.Va.Code 46–9–301(3). As a result, if UNB is indeed a perfected secured creditor, it prevails pursuant to W.Va.Code 46–9–312(5). If, however, UNB's security interest is unperfected, Norton Machine enjoys priority as a lien creditor so long as its rights in the collateral were established without knowledge of the competing security interest. W.Va.Code 46–9–301(1)(b).

UNB's motion for summary judgment included signed copies of the promissory note and security agreement. These documents were duly authenticated by a sworn affidavit of UNB Vice-President Stephen A. Robinson, who

further acknowledged that MSCC's loan was in default. Also attached were certified copies of the pertinent financing statements. These documents are sufficient to demonstrate a perfected present security interest in MSCC's accounts receivable. W.Va.Code 46–9–302(1)(e) and 46–9–303.

■ Norton Machine's only challenge to UNB's perfected secured status appears in its final reply brief to this court. It is suggested, for the first time, that UNB has not established the date the financing statements were filed in the appropriate recording systems. Since this contention was never raised in the trial court, however, it is an improper basis for assigning error. *Rosenberry v. Chumney* (1960), 171 Ohio St. 48, 50, 12 O.O.2d 56, 57, 168 N.E.2d 285, 287; *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 123, 512 N.E.2d 640, 642.

■ Regardless, the date March 30, 1989 is clearly handwritten and initialed in the upper right-hand corner of the certified copy of the financing statement. This original filing date is confirmed by the certified copy of the financing statement amendment. Furthermore, Norton Machine is hardly in a position to raise this belated attack given that its answer to UNB's complaint admitted the security agreement "was duly perfected." See *Burke v. Michigan Cent. RR. Co.* (1917), 96 Ohio St. 496, 504–505, 118 N.E. 111, 113–114. Consequently, we agree with the trial court that UNB has established that no genuine and material questions of fact exist upon its initial claim to priority over MSCC's accounts receivable.

■ Norton Machine nevertheless insists that UNB has waived its security interest and that, alternatively, UNB should be equitably estopped from enforcing such. Had this matter been tried, Norton Machine would bear the burden of proving these defenses. *In re Single Cty. Ditch* (1952), 157 Ohio St. 446, 450, 47 O.O. 330, 332, 105 N.E.2d 873, 876. Likewise, in response to UNB's motion for summary judgment, Norton Machine is obliged to produce evidence demonstrating triable issues of fact on these allegations. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. Mere reliance upon the pleadings is insufficient. Civ.R. 56(E). The dispute established, moreover, must be "material" so that the facts involved could potentially affect the outcome of the lawsuit as well as "genuine" allowing reasonable minds to find for Norton Machine. See *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248–252, 106 S.Ct. 2505, 2510–2512, 91 L.Ed.2d 202, 211–214.

■ Norton Machine did not present evidentiary materials to the trial court

at any stage of the proceedings.[1] As a result, Norton Machine must rely upon the documents submitted by UNB in order to withstand summary judgment. *Toledo's Great Eastern Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 200–201, 24 OBR 426, 427–429, 494 N.E.2d 1101, 1102–1104.

As is the case in most states, a security interest in collateral may be terminated by the debtor under West Virginia law if "authorized by the secured party in the security agreement or otherwise." W.Va.Code 46–9–306(2). Based upon this "or otherwise" language, it is generally understood that a security interest may be "waived." See 9 Anderson, Uniform Commercial Code (1985 & 1990 Supp.) 138, Secured Transactions, Section 9–306:8. Norton Machine does not suggest that UNB expressly abandoned its rights to the collateral. To establish an *implicit* waiver of a valuable security interest, "there must exist unequivocal acts or conduct evidencing an intent to waive [since such] will not be inferred from doubtful or ambiguous factors." *Cent. Washington Bank v. Mendelson–Zeller, Inc.* (1989), 113 Wash.2d 346, 354, 779 P.2d 697, 701.

Norton Machine theorizes that UNB implicitly waived its perfected security interest in the disputed collateral by failing to immediately act upon the American Longwell account. There is no requirement in either the West Virginia Commercial Code or case law, however, that compels a creditor to exercise its rights within such a brief amount of time or risk forfeiture. The two opinions cited by Norton Machine both involve outward expressions of waiver repeated by the creditor over a substantial period. *State v. Dahmer* (Mo.App.1987), 743 S.W.2d 462; *Charterbank Butler v. Cent. Cooperatives, Inc.* (Mo.App.1984), 667 S.W.2d 463; see, also, *Slusser v. Wyrick* (1986), 28 Ohio App.3d 96, 28 OBR 139, 502 N.E.2d 259. In contrast, Norton Machine has not shown in the instant case that UNB has ever expressed an intention to abandon its rights in MSCC's accounts receivable.

Norton Machine's second defense is founded upon the equitable doctrine of estoppel. This standard has not been displaced by the West Virginia Commercial Code. W.Va.Code 46–1–103. Norton Machine accuses UNB of sitting on its superior security interests and maintaining MSCC as an ongoing

---

1. Norton Machine has appended to its appellate brief a copy of what is purported to be a set of UNB's answers to interrogatories. While Norton Machine relies heavily upon this document, it was never provided to the trial court. It is axiomatic that we are therefore precluded from considering these materials. *State v. Booher* (1988), 54 Ohio App.3d 1, 15, 560 N.E.2d 786, 800; *State v. Spencer* (May 22, 1991), Lorain App. No. 90CA004890, unreported, at 2, 1991 WL 87096.

operation thereby denying junior creditors of MSCC an opportunity to enforce their own rights. Again, no evidence is offered to sustain these charges.

Moreover, the lone case cited, *Frierson v. United Farm Agency, Inc.* (C.A.8, 1989), 868 F.2d 302, has nothing to do with equitable estoppel and, in any event, hardly supports Norton Machine's position. In that dispute, as here, a judgment creditor garnished funds of a debtor in which a bank held a prior, perfected security interest. *Id.* at 302–303. After examining the Missouri Commercial Code, the court held that while the bank could not quash the garnishment proceedings at that time because its loan was not in default, the judgment creditor would have to take the contested funds subject to the bank's superior security interest. *Id.* at 304–305.

*Frierson* stands for the proposition that a superior secured creditor cannot defeat enforcement proceedings by a judgment creditor against a common debtor when the secured creditor has neither declared its own loan in default nor initiated a good faith execution of its affirmative remedies. *Martens v. Hadley Mem. Hosp.* (D.D.C.1990), 729 F.Supp. 1391, 1393–1395. Assuming, *arguendo,* that this is the law of West Virginia as well, the *Frierson* rule is entirely consistent with UNB's position. UNB tendered evidence to the trial court which went unchallenged demonstrating that its note to MSCC was indeed in default. UNB does not question Norton Machine's authority to prosecute its own garnishment proceedings against MSCC, but rather seeks recognition that the account seized by Norton Machine was subject to UNB's superior interest. Since the loan is now in default, UNB may rightfully trace and secure its bargained-for collateral pursuant to W.Va.Code 46–9–306(2). *Frierson, supra,* at 305.

Returning to the doctrine of equitable estoppel and the law which controls this suit, the Supreme Court of Appeals of West Virginia recently acknowledged the heavy burden proponents of such claims bear. *Daniel v. Stevens* (1990), 183 W.Va. 95, 394 S.E.2d 79. The court reaffirmed paragraph six of the syllabus in *Stuart v. Lake Washington Realty Corp.* (1956), 141 W.Va. 627, 92 S.E.2d 891, which states:

"The general rule governing the doctrine of equitable estoppel is that in order to constitute equitable estoppel or estoppel in pais there must exist a false representation or a concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice."

In the instant case, Norton Machine has presented no evidence of either a false representation by UNB or a concealment of material facts at a time when UNB was aware of the competing security interest. More important, UNB's superior rights in the collateral were duly noted in the appropriate recording systems providing Norton Machine with constructive knowledge of its own subordinated position. By failing to look into MSCC's financial status prior to the initiation of extensive legal proceedings across three states, Norton Machine acted at its own peril. *Daniel, supra,* 394 S.E.2d at 84–86.

In sum, we agree with the trial court that UNB has satisfactorily demonstrated that no genuine and material questions of fact exist upon its superior claim to MSCC's accounts receivable. Summary judgment was therefore appropriate. This assignment of error is overruled and the judgment of the common pleas court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and MAHONEY, J., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.