No. 19-1082 – *Sheehan v. Mortgage Electronic Registration Systems, Inc., WEI Mortgage Corp., and Seneca Trustees, Inc.*

**FILED**
**November 17, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Workman, Justice, dissenting:

The majority's holding that allows a security interest for a lien on a manufactured home to be perfected by "[s]atisfying the requirements of *Snuffer v. Spangler*, 79 W. Va. 628, 92 S.E. 106 (1917)[]" is in direct conflict with, and ignores, the Legislature's establishment of a single means to perfect such security interest. Specifically, under the Uniform Commercial Code, West Virginia Code § 46-9-303 (2007) and West Virginia Code § 46-9-311(b) (2007 & Supp. 2020), where the manufactured home is registered with and has a certificate of title issued by the West Virginia Division of Motor Vehicles ("DMV"), the sole means of perfecting a security interest in a manufactured home against third parties is to have the lien placed on the vehicle's certificate of title pursuant to West Virginia Code § 17A-4A-1 (2017). In this case, despite the respondent creditors'[1] (hereinafter "the respondents") argument that their lien interest in the manufactured home was perfected by the recording of a Deed of Trust referencing the property "together with all improvements erected on the property and fixtures that are a part of the property[,]"[2] the respondent simply failed to follow the applicable statutes discussed in greater detail

---

[1] The respondent creditors are Mortgage Electronic Registration Systems, Inc., WEI Mortgage Corporation, and Seneca Trustees, Inc.

[2] It is an undisputed fact for the purposes of this case that the manufactured home is physically affixed to the real estate.

*infra*. This failure to properly record their lien interest in the manufactured home on the certificates of title[3] was fatal to the respondents' claim that they have any perfected security interest under the salient statutes. As such, they are not entitled to a superior priority as a creditor in the bankruptcy proceeding.

To find otherwise, as the majority has done, allows the respondents, who are sophisticated lenders, to benefit from their failure to follow the legislatively prescribed methods for lien perfection on a manufactured home. The result will necessarily increase the transaction costs for other parties, including consumers, engaging in these types of transactions because rather than searching for a lien in the place prescribed by the statute, a search will also have to be conducted in other locations where a lien might be recorded.

A fundamental precept of any secured transaction is that for a lender to acquire a valid interest in collateral against third parties, the claim against the collateral must be perfected.[4] To ascertain the appropriate means for perfecting a lien interest against

---

[3] The titles remain active and have not been cancelled pursuant to the procedure set forth in West Virginia Code §17A-3-12b (2017), which is discussed in greater detail *infra*.

[4] This Court recognized in *Daniel v. Stevens*, 183 W. Va. 95, 394 S.E.2d 79 (1990), that

> [o]ne of the purposes of the filing requirements of article 9 of the Uniform Commercial Code, like that of any recording statute, is to protect third parties by providing notice of the existing interest in the collateral to subsequent potential creditors of and purchasers from the debtor. *A concomitant purpose is to protect the creditor who has perfected a security*

collateral one must determine the type of collateral at issue, which, in this case, is a double wide manufactured home.

Critical to any analysis of whether a perfected security interest exists on this manufactured home is the fact that certificate of titles were issued by the DMV for the double wide manufactured home.[5] For purposes of perfecting a security interest in goods covered by a certificate of title, under the UCC,[6] "[e]xcept as otherwise provided in sections 9-303 through 9-306, the following rules *determine the law governing perfection,*

> *interest, by giving such creditor priority over almost all subsequent third-party claimants to the collateral, because the creditor has taken action which would put a reasonably diligent searcher on notice of the prior interest in the collateral. Landon v. Stroud*, 147 Ariz. 208, 211, 709 P.2d 565, 568 (Ct.App.1985), *review denied* (Ariz. Nov. 13, 1985). *See also* syl. pt. 2, *American National Bank & Trust Co. v. National Cash Register Co.*, 473 P.2d 234 (Okla.1970) (framers of Uniform Commercial Code, by adopting "notice filing" system, intended to protect perfected security interests and at the same time give subsequent potential creditors and other interested persons general information and procedures adequate to enable ascertainment of factual details) . . . .

183 W. Va. at 84-85, 394 S.E.2d at 100-101 (emphasis added).

[5] Because it was a double wide manufactured home, two separate certificates of title were issued by the DMV.

[6] It is important to note that neither party argues that the statutes involved are ambiguous. This Court has held that in deciding the meaning of a statutory provision, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995);

*the effect of perfection or nonperfection and the priority of a security interest in collateral*

. . . .ˮ  W. Va. Code § 46-9-301 (2007).  Specifically, West Virginia Code § 46-9-303 "applies to goods covered by a certificate of title" and provides:

> (b) **When goods covered by certificate of title**. Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority. Goods cease to be covered by a certificate of title at the earlier of the time the certificate of title ceases to be effective under the law of the issuing jurisdiction or the time the goods become covered subsequently by a certificate of title issued by another jurisdiction.

> (c) **Applicable law**. *The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title.*

(Some emphasis added).  The majority's examination of the applicable UCC provisions ends here.

The majority fails to examine West Virginia Code § 46-9-311(b) (2020 Supp.), which provides that "a security interest in property subject to a statute, regulation or treaty described in subsection (a)[7] *may be perfected **only** by compliance with those requirements*, and a security interest so perfected remains perfected notwithstanding a change in the use or transfer of possession of the collateral." (emphasis and footnote

---

[7] West Virginia Code § 46-9-311(a) includes property such as manufactured homes.

added). Neither party cited, discussed or relied upon this statute; however, its unequivocal meaning is that the failure to follow the relevant statutory requirements for perfecting a security interest is fatal to the perfection. The majority's decision that complying with these statutory provisions was not the exclusive means for perfection of a security interest is legally incorrect.

Following the directive of the UCC, *see* W. Va. Code § 46-9-311(b), in examining the specific statutes that govern perfecting a security interest in a manufactured home, our focus turns to the provisions of West Virginia Code § 17A-4A-1 to -16 (2017), entitled "Liens and Encumbrances on Vehicle to be Shown on Certificate of Title; Notice to Creditors and Purchasers." [8] West Virginia Code § 17A-4A-1 requires the DMV to show all liens and encumbrances on the face of any certificate of title it issues as follows:

> *The division upon receiving an application for a certificate of title to a* vehicle, trailer, semitrailer, pole trailer, *factory-built home* or recreational vehicle *for which a certificate of title is required under article three of this chapter*, all of which are hereinafter in this article referred to as vehicles, *showing liens or encumbrances upon the vehicle*, *shall*, upon issuing to the owner thereof a certificate of title therefor, *show*

---

[8]The parties and the bankruptcy court describe the "vehicle" at issue as a "manufactured home." A "manufactured home" clearly falls within any of the following statutory definitions of a motor vehicle provided in West Virginia Code § 17A-1-1(2017 & Supp. 2020), including: a factory-built home as defined in West Virginia Code § 17A-l-l(pp); a manufactured home as defined in West Virginia Code § 17A-l-l(qq); a mobile home as defined in West Virginia Code § 17A-1-1(rr); or a house trailer as defined in West Virginia Code § 17A-1-l(ss). The respondents' suggestion that the manufactured home at issue is not a vehicle within the confines of the foregoing statutory definitions is legally untenable.

5

*upon the face of the certificate of title all liens or encumbrances disclosed by the application.*

(Emphasis added). West Virginia Code § 17A-4A-4(a) further establishes that

[a] purchase money lien or encumbrance upon any vehicle *shall be perfected on the date and at time of delivery to the division of motor vehicles of either the application for a certificate of title with all supporting documents, or a completed notice of lien form in a format determined by the division.*

(Emphasis added).

According to West Virginia Code § 17A-4A-3(a) and (b):

a) *A certificate of title, when issued by the division showing a lien or encumbrance, shall be considered from and after the filing with the division of the application therefor or the notice of lien authorized in section four of this article adequate notice* to the state and its agencies, boards and commissions, to the United States government and its agencies, boards and commissions*, to creditors and to purchasers that a lien against the vehicle exists.*

(b) Notwithstanding any other provision of this code to the contrary, and subject to the provisions of subsection (c) of this section, any lien or encumbrance placed on a vehicle by the voluntary act of the owner shall be void as against: (i) Any lien creditor who, without knowledge of the lien, acquires by attachment, levy or otherwise a lien thereupon, *unless the lien or encumbrance is noted on the certificate of title*, a filed application for certificate of title or the notice of lien authorized in section four of this article; and (ii) any purchaser who, without knowledge of the lien or encumbrance, purchases the vehicle, *unless the lien or encumbrance is noted on the certificate of title*, a filed application for certificate of title or the notice of lien authorized in section four of this article: Provided, That a purchaser under this subsection who purchases the vehicle without knowledge of the lien or encumbrance and contemporaneously obtains actual physical

6

possession of the vehicle and the certificate of title for the vehicle *without the lien or encumbrance noted on the certificate of title*, receives the vehicle free and clear of the lien or encumbrance.

(Emphasis added).

The import of the foregoing statutory language is that the only way to perfect a secured interest in a lien on a manufactured home is through a certificate of title issued by the DMV showing the lien, which provides "adequate notice to . . . creditors and to purchasers that a lien against the vehicle exists." *Id; see In re Johnson*, 105 B.R. 352, 356 (1989) (finding that a mobile home was a "motor vehicle" within the meaning of West Virginia title registration statutes and holding that "*the sole effective means of perfecting a security interest in such a mobile home against third parties is to have the lien placed on the vehicle's certificate of title pursuant to § 17A-4A-1*.") (emphasis added)). When a lien is perfected according to the relevant DMV statutes, it has priority over all other liens involving the vehicle. *See* W. Va. Code § 17A-4A-5 (2017) (declaring that "[t]he *liens shown upon a certificate of title* issued by the department pursuant to applications for same *shall have priority over any other liens against such vehicle, however created and recorded*, except as otherwise provided in this article." (emphasis added)); *see also Ford Motor Credit Co., LLC v. Hicks*, No. 5:10-cv-00811, 2012 WL 1906419, at *9 (S.D. W.Va. May 25, 2012) (district court, on review of bankruptcy court decision, recognized that "[w]ith *respect to perfection, goods covered by a certificate of title, like the motor vehicle in this case, 'become covered by a certificate of title when a valid application for the*

*certificate of title and the applicable fee are delivered to the appropriate authority*.' W. Va. Code § 46-9-303(b); *see also* W. Va. Code §§ 46-9-309(1), 46-9-311(a).") (emphasis added).

Having established that there is only one way to perfect a security interest in a lien on a manufactured home, the question becomes: what occurs when the manufactured home becomes affixed to real property? That this can and does occur was contemplated by the Legislature when it enacted West Virginia Code § 17A-3-12b(a). The statute provides, in relevant part:

> The commissioner may cancel a certificate of title for a mobile or manufactured home affixed to the real property of the owner of the mobile or manufactured home. The person requesting the cancellation shall submit to the commissioner an application for cancellation together with the certificate of title. . . . The commissioner shall return one copy of the cancellation certificate to the owner and shall send a copy of the cancellation certificate to the clerk of the county commission to be recorded and indexed in the same manner as a deed, with the owner's name being indexed in the grantor index. . . . The clerk shall return a copy of the recorded cancellation certificate to the owner, unless there is a lien attached to the mobile or manufactured home, in which case the copy of the recorded cancellation certificate shall be returned to the lienholder. Upon its recording in the county clerk's office, the mobile or manufactured home shall be treated for all purposes as an appurtenance to the real estate to which it is affixed and be transferred only as real estate and the ownership interest in the mobile or manufactured home, together with all liens and encumbrances on the home, shall be transferred to and shall encumber the real property to which the mobile or manufactured home has become affixed.

By providing for the cancellation of the certificate of title, the Legislature provided a way for personal property, i.e., a manufactured home affixed to real property, to cease being treated as personal property under the DMV statutes, and instead to be treated as real property governed by the rules for securing liens to real estate. *See* W. Va. Code § 38-1-1a (2011) (providing for deed of trust used for lien on real estate) and W. Va. Code § 40-1-9 (2019) (providing that deeds of trust are invalid as to creditors and subsequent purchasers for valuable consideration until recorded). Had the certificate of title issued by the DMV been cancelled, there would be no question that lien interest in the manufactured home could have been secured by the relevant Deed of Trust – but these are not the facts in the instant case.

Here, there was no compliance (or even attempted compliance) by the respondents with any of the foregoing statutes. The certificates of title issued on the manufactured home remain active, having never been cancelled. The majority ignores the respondents' lack of compliance, choosing to embrace the respondents' argument that they did not comply with these statutes for three reasons. First, the respondents argue that there is no statute that specifically provides that following the statutory scheme embraced in the UCC and DMV statutes is the sole way to perfect a security interest in a manufactured home. This argument wholly disregards W. Va. Code § 46-9-311(b), which provides, in no uncertain terms, that "a security interest in property subject to a statute . . . described in

9

subsection (a) [which includes manufactured homes] *may be perfected only by compliance with those requirements . . . .*" (Emphasis added).

Second, the respondents contend in a rather circular argument that because the manufactured home is physically affixed to real estate it is no longer a "vehicle" as defined by West Virginia Code § 17A-1-1. This argument, however, completely overlooks the facts in this case that two certificates of title were issued on the manufactured home, no liens were ever recorded on the certificates of title, and both certificates of title remain active, having never been cancelled. *See* W. Va. Code § 17A-3-12b. According to the respondents, none of these facts matter. The respondents essentially argue that the entire statutory scheme for perfecting a lien on the double wide manufactured home can be wholly disregarded simply by affixing the manufactured home to real property, because then the manufactured home is no longer a "vehicle" and, presumably, the DMV certificates of title magically disappear.

Third, the respondents contend that because West Virginia Code § 17A-3-12b provides that "[t]he [DMV] commissioner *may* cancel a certificate of title for a mobile or manufactured home affixed to the real property of the owner of the mobile or manufactured home[,]" suggests that "the process is optional while the reference to a manufactured home already 'affixed' to real estate indicates that cancellation of the title is

not necessary for affixing a manufactured home to real estate." This very narrow reading of the statute is premised upon the respondents' assumption that

> [i]f notation of a lien on a certificate of title is not required for perfection of a security interest in a manufactured home that is not a vehicle as defined by WV Code §17A-1-l(a), it follows that cancellation of the certificate of title under WV Code §17A-3-12b(a) is not required for the manufactured home to be affixed.

However, this assumption clearly ignores the express language of West Virginia Code § 17A-3-12b and the UCC provisions governing perfection of a security interest in such property.

It is unfortunate that the majority chooses to embrace the respondents' arguments that the statutory law in West Virginia does not dictate only one means for perfecting a security interest in a manufactured home. Relying upon case law from 1917 to rectify the respondents' failings, the majority adopts the respondents' argument that the manufactured home can also be considered affixed to the real estate through application of West Virginia common law as set forth in *Snuffer. See* 79 W. Va. 628, 92 S.E. 106. Thus, according to the majority, a security interest in a lien on a manufactured home affixed to the real estate can also be secured by the recording the deed of trust under common law.

In *Snuffer*, decided long before enactment of the UCC and the DMV statutes, the Court developed the following test in order to determine whether certain machinery

located on property in Raleigh County and used in the operation of a woolen factory was part of the real estate or "mere personal chattel":

> we conclude that personal property used in connection with real estate is fixtures and part of the realty, when the following conditions concur: First[,][i]t must be attached to the real estate, and by this we do not mean that it has to become so attached as to do serious damage to the realty, or to the property itself in order to remove it, but that it must be so attached as that the two, the real estate and the fixtures, work together to one end; second[,] [i]t must be reasonably necessary and adapted to the purposes for which the real estate is being used; and, [t]hird[,] [i]t must be the intention of the party placing such property upon the real estate to make it a part thereof. If the first two of these elements concur—that is, its attachment to the real estate and it adaptability to the purposes for which the real estate is being used—it will be presumed that the party attaching it intended that it should be a part of the real estate, unles[s] a contrary intention appears from the conduct of the parties in relation to it.

*Id*. at 634, 637-38, 92 S.E. at 109 and 110.[9]

The problem with the majority's reliance upon *Snuffer* to resolve the current issue is that neither *Snuffer*, nor the *Sanders* memorandum decision referenced *infra*, involved perfection of a secured interest, i.e. a secured transaction. Undoubtedly the

---

[9] This Court continued to adhere to the principles of *Snuffer* recently in a memorandum decision. *See Sanders v. Brown*, No. 18-0017, 2018 WL 6119215 (W. Va. Nov. 21, 2018). In *Sanders*, like its predecessor *Snuffer*, the issue before the Court did not involve secured transactions and priority of secured interests in liens. Instead, the issue in *Sanders* was who owned the manufactured home that was affixed to the real estate at issue in the case.

principles enunciated by the Court in *Snuffer* are still viable where the issues do not involve areas expressly governed by specific statutes, in this case the UCC and DMV statutes concerning perfection and priority of a security interest in a manufactured home. However, this Court has consistently held that "[i]t has been a mainstay of Anglo-American jurisprudence that the common law gives way to a specific statute that is inconsistent with it; when a statute is designed as a revision of a whole body of law applicable to a given subject, it supersedes the common law." *State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 128, 464 S.E.2d 763, 770 (1995). It is clear that the common law has been superceded by the statutes as discussed *supra*. Therefore, the majority's holding, excusing respondents' noncompliance with the statutory scheme for perfecting a security interest in a manufactured home affixed to real estate, undermines relevant UCC and DMV statutes and is plainly wrong.

For the foregoing reasons, I respectfully dissent, and I have been authorized to state that Chief Justice Armstead joins me in dissenting from the majority's decision.